Docket No. 104976.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. WADE BEACHEM, Appellee.

*Opinion filed May 22, 2008.*

JUSTICE GARMAN delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Freeman, Fitzgerald, Kilbride, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

Defendant, Wade Beachem, was convicted in the circuit court of Cook County of possession of a controlled substance with intent to deliver (720 ILCS 570/401(a)(1)(A) (West 2004)) and was sentenced to six years' imprisonment. Defendant appealed his conviction and argued, *inter alia*, that he was entitled to credit for time served under section 5–8–7 of the Unified Code of Corrections (730 ILCS 5/5–8–7 (West 2004)), for the time he spent in the Sheriff's Day Reporting Center program. The appellate court agreed with defendant and amended the mittimus to grant defendant 171 days of credit for the days he actually reported to the Day Reporting Center. 374 Ill. App. 3d 145. The State filed a petition for leave to appeal pursuant to Supreme Court Rules 612 (210 Ill. 2d R. 612) and 315 (210 Ill. 2d R.

315). This court granted the State's petition, and, for the following reasons, we affirm the judgment of the appellate court.

BACKGROUND

Defendant was arrested on the evening of March 3, 2004, after police officers, executing a search warrant, discovered two plastic bags containing crack cocaine in defendant's closet. Defendant was charged by indictment with possession of a controlled substance with intent to deliver (720 ILCS 570/401(a)(1)(A) (West 2004)), a Class X offense.

Prior to trial, defendant was assigned to the Sheriff's Day Reporting Center program (Program) for 258 days and actually reported to the Day Reporting Center (Center) on 171 days.[1] The record before this court does not provide specific information concerning defendant's involvement in the Program. For instance, it does not specify when defendant was assigned to the Program, when defendant's enrollment was terminated, or the number of hours per day that defendant spent at the Center. However, despite these deficiencies, the parties do not dispute that defendant was assigned to the Program for 258 days and spent between three and nine hours at the Center on 171 days. Since neither party disputes the accuracy of these facts, we accept them as true for the purpose of the present appeal.

The Cook County sheriff operates the Program to comply with a consent decree that caps the number of inmates that the Cook County jail is allowed to house. See *Duran v. Elrod*, 713 F.2d 292 (7th Cir. 1983). This consent decree requires the sheriff to release prisoners in order to keep the total jail population under this cap. To that end, the district court entered an order directing the sheriff to release "on their own recognizance the persons held in default of the lowest amount of

---

[1]At the outset, we note that the program defendant was assigned to is titled the "Day Reporting Center." The title given to this program is easily confused, however, with the physical location to which defendant actually reported. Therefore, for clarity's sake we will refer to the Day Reporting Center program as the "Program" and to the physical facility where defendant spent time as the "Center."

bail, and among persons held on the same amount of bail the ones who have been confined for the longest time." *Duran*, 713 F.2d at 294.

For information on the Program, the parties have referred this court to the Cook County sheriff's office Web site. The Cook County sheriff's office Web site describes the Program as a "one-of-a-kind intensive supervision program that reduces overcrowding in Cook County Jail while providing services and direction for pretrial non-violent participants." http://www.cookcountysheriff.org/dcsi/day.html (last visited April 21, 2008). The typical participant in the Program is "male, non-violent, and in pre-trial status usually on drug-related charges." http://www.cookcountysheriff.org/dcsi/day.html (last visited April 21, 2008). Upon entry into the Program, each participant must complete an eight-day orientation. At the end of the orientation the participant is evaluated and placed onto a "program track." The tracks "vary in intensity from nine (9) hours to three (3) hours daily." http://www.cookcountysheriff.org/dcsi/day.html (last visited April 21, 2008). "The basic concept is to acclimate the participant to the daily routine of reporting to a strictly supervised environment." http://www.cookcountysheriff.org/dcsi/day.html (last visited April 21, 2008). "Every participant is subject to mandatory daily attendance and drug testing. Any offender who fails to adhere to the rules of the Program is reincarcerated. Such infractions include: excessive tardiness and absenteeism, new arrests, or disregard for [Program/Center] rules." http://www.cookcountysheriff.org/dcsi/day.html (last visited April 21, 2008).

The Program is administered through the Cook County sheriff's office's Department of Community Supervision and Intervention. The Department of Community Supervision and Intervention administers "all programs *** for inmates outside the Department of Corrections." http://www.cookcountysheriff.org/dcsi/index.html (last visited April 21, 2008). The Department of Community Supervision and Intervention "maintains its own Fugitive Unit to locate and reincarcerate AWOLs from its programs." http://www.cookcountysheriff.org/dcsi/index.html (last visited April 21, 2008).

Following a bench trial, defendant was found guilty of possession with intent to deliver and sentenced to the minimum term of six

years' imprisonment with a 26-day credit for time served. The 26 days of credit given by the trial court reflected the time defendant spent in actual physical confinement. The trial court made no mention of, nor was there any discussion of, giving defendant credit for his time in the Program and/or at the Center.[2]

On appeal, defendant argued, and the appellate court agreed, that defendant should have received additional credit for the time he spent in the Program prior to trial. 374 Ill. App. 3d 145. The appellate court, citing this court's opinion in *People v. Campa*, 217 Ill. 2d 243 (2005), granted defendant credit for the 171 days he reported to the Center. In doing so, the appellate court declined to extend the logic of either *People ex rel. Morrison v. Sielaff*, 58 Ill. 2d 91 (1974) (time spent while released on bond did not count as time in custody for purpose of credit for time served), or *People v. Ramos*, 138 Ill. 2d 152 (1990) (time spent in home confinement as a condition of bond did not constitute being in "custody"), as neither case dealt with the Program. The appellate court also declined to follow an appellate court decision, *People v. Martin*, 357 Ill. App. 3d 663 (2005) (holding that a defendant in the Program was not in custody for purposes of section 5–8–7). The appellate court noted that while *Martin* dealt with the Program, the opinion relied on *Ramos* and rejected the later affirmed logic of *Campa*. 374 Ill. App. 3d at 151. Accordingly, the appellate court found that under the present circumstances, defendant was "in 'custody' as the term is used in the sentencing credit provision of the Unified Code of Corrections (730 ILCS 5/5–8–7(b) (West 2004))." 374 Ill. App. 3d at 153.

However, the appellate court held that defendant was entitled only to credit for the days he actually reported to the Center. 374 Ill. App. 3d at 153. The appellate court noted that a defendant who is held in

---

[2]Despite the apparent forfeiture argument, the State, as appellant, has not raised the issue of forfeiture before this court. Likewise, there is no indication that the State raised forfeiture before the appellate court. Therefore, because forfeiture is " 'in the nature of an affirmative defense that the State may either raise, waive, or forfeit' " (*People v. Blair*, 215 Ill. 2d 427, 442 (2005), quoting *People v. Stivers*, 338 Ill. App. 3d 262, 264 (2003)) the forfeiture argument is itself forfeited. Accordingly this court will address the merits of the present case.

custody for even part of a day is entitled to credit against his sentence for all of that day, but the court was "not prepared" to give defendant 258 days credit "for the entire period during which [defendant] was potentially subject to the restrictions of the sheriff's Day Reporting Center program." 374 Ill. App. 3d at 153, citing *People v. Quintana*, 332 Ill. App. 3d 96 (2002). Thus, while the appellate court gave defendant a full day's credit for the few hours defendant spent at the Center on 171 days, it denied credit for weekends, holidays, and excused court dates when defendant did not report to the Center.[3]

The State, as appellant, asserts that the appellate court erred in granting defendant credit for the time spent in the Center, claiming that defendant was not in "custody" within the meaning of section 5–8–7.

## STANDARD OF REVIEW

The fundamental question presented is whether defendant's participation in the Program constitutes being in "custody" as that term is contemplated by section 5–8–7. As this is a question of statutory interpretation and does not involve disputed facts, our review is *de novo*. *People v. Cordell*, 223 Ill. 2d 380, 389 (2006); *People v. Cosenza*, 215 Ill. 2d 308, 314 (2005).

## ANALYSIS

The primary objective of statutory interpretation is to ascertain and give effect to the intent of the legislature. *People v. Perry*, 224 Ill. 2d 312, 323 (2007). This inquiry "must always begin with the language of the statute, which is the surest and most reliable indicator of legislative intent." *People v. Pullen*, 192 Ill. 2d 36, 42 (2000). See also *Campa*, 217 Ill. 2d at 252, citing *People v. Woodard*, 175 Ill. 2d 435, 443 (1997). We construe the statute as a whole and afford the language of the statute its plain and ordinary meaning. *People ex rel. Devine v. Sharkey*, 221 Ill. 2d 613, 617 (2006), citing *People v. A*

---

[3]Neither party has disputed the appellate court's determination that defendant was not entitled to credit for the time he was in the Program but was nonetheless not obligated to report to the Center. Accordingly, we do not review this determination.

*Parcel of Property Commonly Known As 1945 North 31st Street, Decatur, Macon County, Illinois*, 217 Ill. 2d 481, 499 (2005). "We do not view words and phrases in isolation but consider them in light of other relevant provisions of the statute." *Campa*, 217 Ill. 2d at 252-53 (citing *People v. Maggette*, 195 Ill. 2d 336, 348 (2001), and *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 504 (2000)). Accordingly, we begin our analysis by considering the meaning of the term "custody" as used in section 5–8–7.

Section 5–8–7 provides, in relevant part, that "(b) [t]he offender shall be given credit on the determinate sentence or maximum term and the minimum period of imprisonment for time spent in custody as a result of the offense for which the sentence was imposed \*\*\*." 730 ILCS 5/5–8–7(b) (West 2004).

The State argues that the appellate court erred in concluding that the Program falls within section 5–8–7's meaning of the term "custody" because only "actual confinement or incarceration" is sufficient. Thus, the State argues that credit for time served is not appropriate under section 5–8–7 because the Program represents a "lesser restraint" that is not the "equivalent of custodial confinement."

The term "custody" is not defined by section 5–8–7 nor any other relevant statue. As noted in *Campa*, the term "custody" is not defined under either the Code of Criminal Procedure of 1963 (725 ILCS 5/100–1 *et seq.* (West 2004)) or the Criminal Code of 1961 (720 ILCS 5/1–1 *et seq.* (West 2004)). *Campa*, 217 Ill. 2d at 253. Likewise, "custody" is not defined in the Unified Code of Corrections (730 ILCS 5/5–1–1 *et seq.* (West 2004)). Where a term is not defined, "we must assume that the legislature intended the term to have its ordinary and popularly understood meaning." *Maggette*, 195 Ill. 2d at 349. Therefore, despite the General Assembly's power to make " 'a reasonable definition of the terms used in an act' " (*Perry*, 224 Ill. 2d at 326-27, quoting 34 Ill. L. & Prac. *Statutes* §51, at 86 (2001)), "[i]t is entirely appropriate to employ the dictionary as a resource to ascertain the meaning of undefined terms." *Price v. Philip Morris, Inc.*, 219 Ill. 2d 182, 243 (2005), citing *People ex rel. Daley v. Datacom Systems Corp.*, 146 Ill. 2d 1, 16 (1991). See also *People v. Skillom*, 361 Ill. App. 3d 901, 909 (2005) ("It is appropriate to turn to a dictionary when determining the meaning of an otherwise undefined

word or phrase"; citing *People v. Ward*, 215 Ill. 2d 317, 325 (2005), and *People v. Blair*, 215 Ill. 2d 427, 439-45 (2005)).

The definition of "custody" is very expansive. Black's Law Dictionary underscores the spectrum of state control that can constitute "custody" by breaking the term down into five different forms. "Constructive custody," the least burdensome form, is defined as "custody of a person (such as a parolee or probationer) whose freedom is controlled by legal authority but who is not under direct physical control." Black's Law Dictionary 412 (8th ed. 2004). "Constructive custody" is distinguished from the more onerous forms of both "penal custody" and "physical custody." "Penal custody" is defined as "[c]ustody intended to punish a criminal offender." Black's Law Dictionary 412 (8th ed. 2004). "Penal custody" can be further distinguished from "physical custody," which is defined as "[c]ustody of a person (such as an arrestee) whose freedom is directly controlled and limited." Black's Law Dictionary 1183 (8th ed. 2004).

In fact, as this court has previously noted, "custody" " 'is "very elastic and may mean actual imprisonment or physical detention or mere power, legal or physical, of imprisoning or of taking manual possession." ' " *Campa*, 217 Ill. 2d at 254, quoting *People v. Campa*, 353 Ill. App. 3d 178, 182 (2004), quoting Black's Law Dictionary 347 (5th ed. 1979). Therefore, custody may encompass varying degrees of state control.

General usage dictionaries likewise give a broad definition for "custody." Webster's Third New International Dictionary defines "custody" as "judicial or penal safekeeping: control of a thing or person with such actual or constructive possession as fulfills the purpose of the law or duty requiring it: imprisonment or durance of persons or charge of things." Webster's Third New International Dictionary 559 (1993).

"A statute is ambiguous when it is capable of being understood by reasonably well-informed persons in two or more different senses." *In re J.W.*, 204 Ill. 2d 50, 85 (2003), citing *People v. Jameson*, 162 Ill. 2d 282, 288 (1994). Section 5–8–7 is ambiguous because the term "custody" has several definitions and nothing in the context of the statute provides any indication as to the appropriate definition. Because section 5–8–7 is ambiguous, the question before this court

is what degree of control the legislature intended when it used the term "custody."

This court has developed two distinct lines of cases interpreting the meaning of the term "custody" in other contexts. The State urges this court to follow the *Morrison* and *Ramos* cases. In *Morrison* and *Ramos* this court determined that a defendant on bond was not in "custody" for purposes of section 5–8–7. Defendant, on the other hand, asserts that *Campa* is applicable. In *Campa*, this court determined that a defendant in the Program was in "custody" for purposes of the speedy-trial statute. Defendant argues that the *Campa* decision is more analogous, as *Campa* actually dealt with the Program and not with a defendant on bond. The State, while acknowledging that *Campa* had to do with the Program, nonetheless argues that *Campa* is inapplicable because *Campa* dealt with the meaning of "custody" as that term is used in the speedy-trial statute, but *Morrison* and *Ramos* dealt with credit for time served. For the reasons that follow, we agree with defendant.

The State argues that this court should follow the *Morrison* and *Ramos* decisions and find that "custody" means actual physical confinement. In *Morrison*, this court concluded that the defendant who was released by the court on bail was not eligible to receive credit for time served under section 5–8–7. In reaching this conclusion, this court reasoned that "custody" "does not include the period of time during which the defendant was released on bail but is predicated upon his confinement." *Morrison*, 58 Ill. 2d at 94.

The reasoning of *Morrison* was extended by *Ramos*, where this court concluded that a defendant who was on home electronic monitoring as a condition of his bond was not in "custody" for the purpose of section 5–8–7. This court reached this conclusion despite defendant's being confined to his home for 168 days during which he was allowed to leave only three times. *Ramos*, 138 Ill. 2d at 154 (the defendant was allowed to go to his arraignment and his attorney's office and to attend the birth of his child; he was denied permission to visit the dentist). In reaching this conclusion, the court noted the significant differences in the degree of liberty and personal intrusion that a defendant on electronic monitoring faces as opposed to a defendant who is confined in a jail or prison. The court reasoned:

"Home confinement, though restrictive, differs in several important respects from confinement in a jail or prison. An offender who is detained at home is not subject to the regimentation of penal institutions and, once inside the residence, enjoys unrestricted freedom of activity, movement, and association. Furthermore, a defendant confined to his residence does not suffer the same surveillance and lack of privacy associated with becoming a member of an incarcerated population." *Ramos*, 138 Ill. 2d at 159.

The court further noted that previous cases had not expressly stated that "section 5–8–7(b) is available only in instances of institutional confinement" but that from "the court's comparison of 'confinement' with the 'lesser restraints' of probation, conditional discharge, and supervision, it is clear, however, that such a limitation was again intended." *Ramos*, 138 Ill. 2d at 159.

Defendant argues that this court should follow the *Campa* decision and find that "custody" encapsulates time spent at the Center. Defendant asserts that *Campa* is controlling because unlike *Morrison* and *Ramos*, *Campa* actually dealt with the Program. In *Campa*, this court examined the term "custody" as used in the speedy-trial statute (725 ILCS 5/103–5 (West 2004)) and concluded that time spent in the Program constituted being in "custody." *Campa*, 217 Ill. 2d 243. The court specifically reasoned:

"[T]he legislature did not intend that the term 'custody,' as it is used in the speedy-trial statute, be equated to confinement. Rather, we believe that the legislature intended the term 'custody' to have a broad meaning and encompass lesser forms of restraint than confinement. The legislature intended that the term 'custody' evolve with changing programs in our correctional institutions." *Campa*, 217 Ill. 2d at 254.

Thus, defendant asserts that "custody" is not synonymous with confinement and that lesser forms of restraint are sufficient to constitute "custody" under section 5–8–7.

Defendant goes on to argue that *Campa* is more applicable because unlike a defendant on bond, a defendant in the Program remains under the legal authority of the sheriff. For instance, a defendant in the Program can be prosecuted for escape if he fails to

return. See *Campa*, 217 Ill. 2d at 256-57. Further, defendant argues that a defendant in the Program is "only participating by the grace of the Sheriff's Department. He or she has no constitutional or statutory entitlement to such a boon." In fact, defendant asserts that in the unlikely event that "a large number of beds suddenly became available at the correctional facility, the Sheriff could simply order the defendant to return to the facility and the defendant would be powerless to challenge such a determination." Thus, defendant draws a distinction between a defendant on bond and a defendant in the Program and argues that *Morrison* and *Ramos*, therefore, are not on point.

Notwithstanding this court's opinion in *Campa*, the State attempts to differentiate *Campa* from *Morrison* and *Ramos* by noting that actual confinement is needed to receive credit for time served under section 5–8–7. The State asserts that defendant's focus on who retains the power over a defendant is irrelevant because it does not address actual confinement. Thus, the State maintains that the present case should be controlled by *Morrison* and *Ramos*.

This case presents a significantly different situation than *Morrison* or *Ramos*, as defendant in the instant matter was not on bond. Despite the language of the consent decree in *Duran* (*Duran*, 713 F.2d at 294), defendant's release from confinement was not on a recognizance bond. As this court stated in *Campa*, "we hold that defendant was not on bail or recognizance while participating in the Day Reporting Center program." *Campa*, 217 Ill. 2d at 261. Importantly, in *Campa*, this court reasoned that the sheriff's release of inmates bypassed the statutory procedures for the establishment of a bail amount or for release on the defendants' own recognizance. We reasoned that only the court had the statutory authority to release a defendant on his own recognizance. *Campa*, 217 Ill. 2d at 261-65. This court concluded the analysis by noting that "a sheriff cannot substitute his or her authority for that of the trial court merely by holding a defendant to conditions similar to those a court may impose." *Campa*, 217 Ill. 2d at 265.

A bond, established by a court of competent jurisdiction, provides a defendant with judicial procedures that not only protect him from arbitrary arrest, but also provide a means to modify or contest an aspect of or denial of bond. A defendant who is properly entered into

bond, recognizance or otherwise, is entitled to judicial procedure before being arrested or having the terms of his liberty modified. For instance, the Code of Criminal Procedure provides that following a defendant's failure to comply with any condition of a bail bond or recognizance bond "the court *** may *** issue a warrant for the arrest of the person." 725 ILCS 5/110–3 (West 2004). Further, if a defendant is "arrested or surrenders within 30 days of the issuance of the warrant" he may be bailable again if "he shows by the preponderance of the evidence that his failure to appear was not intentional." 725 ILCS 5/110–3 (West 2004). Additionally, the Code of Criminal Procedure provides that a defendant may apply to have the amount of his bail reduced, or "alter the conditions of the bail bond or grant bail where it has been previously revoked or denied." 725 ILCS 5/110–6(a) (West 2004). Further, if the State makes an application to alter the conditions of a defendant's bail, he is, with limited exceptions, entitled to "[r]easonable notice of such application by the State." 725 ILCS 5/110–6(d) (West 2004). Even in the event that the State files a verified application to have a defendant arrested immediately, he is still entitled to a hearing within 10 days on the State's application. At this hearing, "the State has the burden of going forward and proving the violation by clear and convincing evidence." 725 ILCS 5/110–6(f)(1), (f)(2) (West 2004). Wherein, "evidence shall be presented in open court," and a defendant is entitled to "testify, to present witnesses in his behalf, and to cross-examine witnesses if any are called by the State, and representation by counsel and if the defendant is indigent to have counsel appointed for him." 725 ILCS 5/110–6(f)(2) (West 2004).

By contrast, a defendant in the Program has no statutory entitlement to any of the foregoing procedures and protections. For instance, there is no requirement that the sheriff obtain a warrant prior to defendant's rearrest. In fact, the Cook County sheriff's office maintains "its own Fugitive Unit to locate and reincarcerate AWOLs f r o m    i t s    p r o g r a m s .    " http://www.cookcountysheriff.org/dcsi/index.html (last visited April 21, 2008).

Further, a defendant in the Program does not have a statutory right to challenge the terms, conditions, or rules of his participation in the Program. There is no established judicial procedure for a defendant to

challenge the sheriff's selection of inmates for the Program, nor to contest the terms or the track to which he is assigned. There is no right to a hearing and no right to counsel. A defendant must simply adhere to the sheriff's unilaterally imposed conditions of participation. "Any offender who fails to adhere to the rules of the program is reincarcerated." http://www.cookcountysheriff.org/dcsi/day.html (last visited April 21, 2008).

Unlike a defendant who is actually released on bond, the sheriff bears no burden of proof before finding that a defendant has violated the rules of the Program and reincarcerating him. A defendant is therefore subject to the discretion of the sheriff. Additionally, because there is no statutory authority for the Day Reporting Center, there is no restriction on the sheriff's ability to create, change, or terminate the Program. The sheriff could, at any point, disband the Program or intensify the Program. An adversely affected defendant would have no judicial recourse to contest the rule change, because he has no statutory right to participate in the Program to begin with.

Nonetheless, the State focuses on the fact that defendant has "not been imprisoned at all while in the Day Reporting Program." The State further argues that the Program is a "lesser penal restraint" that does not entitle defendant to credit for time served. In the same vein, the State asserts that defendant's arguments that he "can be prosecuted for escape, and that he is 'vulnerable' to reincarceration for violations determined by the sheriff instead of a court" are irrelevant because they focus on "who has legal power over defendant, but do not address whether he is actually confined."

The State's focus on actual confinement is misplaced, as "custody" involves more than mere physical possession and geographic limitation. The dictionary definition of "custody" is broad enough to incorporate virtually any degree of state control. However, despite the breadth of this definition, this court has found that some state control is outside the definition of "custody." In *Ramos*, the defendant was confined to his home for 168 days, as a condition of his bond. Nevertheless, this court held that defendant was not in custody. *Ramos*, 138 Ill. 2d 152. Yet, in *People v. Simmons*, 88 Ill. 2d 270 (1982), this court held that a defendant who failed to return to the Peoria County Correctional Center from an unsupervised six-hour shopping trip was in custody and could be prosecuted for escape. In

reaching this conclusion the court reasoned that "[h]owever much the limits of his confinement were temporarily enlarged, or the restrictions on his conduct temporarily lessened, he was still legally in the custody of the Center, and had a legal duty to submit to that custody." *Simmons*, 88 Ill. 2d at 273. Thus, in *Simmons*, this court found that it was the legal duty to submit to custody and not the actual physical confinement, or lack thereof, which defined a defendant's custodial status.

In the present case, the sheriff's decision to modify the means used to hold defendant had no impact on the sheriff's legal authority over defendant or on defendant's obligation to submit to that authority. Thus, defendant, like the defendant in *Simmons*, was in custody while participating in the Program. In this case, the trial court considered all the relevant factors under the Code of Criminal Procedure (725 ILCS 5/110–5 (West 2004)) and set defendant's bail. Defendant, however, never posted bail and was never admitted to bond. Instead, the sheriff released defendant from the confines of the Cook County jail on the condition that he participate in the Program. Admittedly, "the limits of [defendant's] confinement" were enlarged, and the "restrictions on his conduct" were less onerous than incarceration, but, as in *Simmons*, he still remained under the legal custody of the sheriff and had a legal duty to submit to that authority at any time and for any reason. Defendant had no right to be in the Program and had no recourse under the statutes of this state if the sheriff decided to reincarcerate him, or even to terminate the entire Program and reincarcerate all the participants.

Further, even if physical confinement were required to constitute "custody," defendant was still subject to confinement, albeit limited confinement, while at the Center. Defendant spent between three and nine hours a day in a state-run "strictly supervised environment." http://www.cookcountysheriff.org/dcsi/day.html (last visited April 21, 2008). The amount of time defendant spent there, the program track defendant was placed on, and the services provided to him were all at the discretion of the sheriff. Defendant was not free to come and go as he pleased. He was not free to structure his day as he saw fit. He was obligated to report at an established time to and participate in a state-run program. He was not given the ability to decline attending on any given day. In fact, defendant's failure to report could result in

his immediate arrest and reincarceration. Thus, unlike a defendant on a traditional bond, a defendant in the Program is not only under the "constructive custody" of the sheriff, he is also under the sheriff's physical custody for several hours a day. Thus, we hold that defendant was in "custody" while participating in the Program for the purposes of section 5–8–7.

Additional support for our conclusion that defendant was in custody while enrolled in the Program comes from the fact that defendant's failure to report could result in his being prosecuted for escape. See 720 ILCS 5/31–6 (West 2004); *Simmons*, 88 Ill. 2d 270; *People v. Marble*, 91 Ill. 2d 242 (1982). In *Campa*, this court held that "[s]ince escape is the unauthorized departure from custody [citation], a defendant cannot escape unless he is first in custody." *Campa*, 217 Ill. 2d at 259. We find this logic no less persuasive in the current context than it was in the context of the speedy-trial statute of *Campa*. As we stated in *Campa*, "[a] defendant must necessarily be in 'custody' while participating in these programs if he is to be held accountable for 'escape' for failure to comply with the terms of the programs." *Campa*, 217 Ill. 2d at 259.

Finally, we acknowledge the State's argument that the purposes behind the enactments of section 5–8–7 and the speedy-trial statute are different. However, this difference does not necessitate a different result, as under the totality of present circumstances, we believe that the Program falls within the legislature's intended meaning of the term "custody." In the present case, the sheriff maintains complete legal authority over defendant and physical custody for a period of time every workday. In addition to the sheriff's legal authority over defendant, the sheriff also has complete authority over the Program. The sheriff may, at his discretion, modify, intensify, or cancel the Program at any time without affording defendant process or judicial oversight. Defendant's involvement in the Program, the hours he is required to report, the degree of freedom afforded outside the Center, as well as the Program's very existence, are all under the control of a state official who has the power to make any change he sees fit at any time he sees fit. This situation must fall within the legislature's intended meaning of "custody" as contemplated by section 5–8–7. Here, it is the sheriff, not a court, who has chosen to modify the means used to hold defendant. The fact that the sheriff has chosen to

make defendant's confinement less onerous does nothing more to deprive defendant of credit for time he has served than the sheriff's decision to hold defendant in solitary confinement would entitle him to extra credit for time served.

## CONCLUSION

For the reasons stated above, we conclude that time spent in the Center constitutes "time spent in custody" for purposes of section 5–8–7 of the Unified Code of Corrections. 730 ILCS 5/5–8–7 (West 2004). The judgment of the appellate court is therefore affirmed.

*Affirmed.*