JUSTICE SPOMER, dissenting: I respectfully dissent. The result of the governmental action in this case is to take profitable farmland and declare it to be vacant and blighted in order to facilitate a deal whereby a developer can be reimbursed with millions of dollars of public taxpayer funds for the costs associated with the commercial development of that property. For the reasons that follow, I believe that the tax-increment financing (TIF), Business District, and economic incentive agreement ordinances enacted by the City of Belleville in this case fail to conform to the requirements of the applicable sections of the Illinois Municipal Code and should be invalidated. 1. TIF Ordinance The TIF redevelopment project area (TIF district) is composed of 150 acres, 143 of which were profitable, producing farmland at the time of the creation of the TIF district. In order to create a TIF district under the Tax Increment Allocation Redevelopment Act (TIF Act) (65 ILCS 5/11—74.4—1 et seq. (West 2006)), a municipality must, inter alia, make a determination that the land it wishes to include in the TIF district is a blighted area within the meaning of the TIF Act. 65 ILCS 5/11—74.4—3(p) (West 2006). The TIF Act sets forth different tests for determining whether land is “blighted,” depending on whether the land is considered “vacant” or “improved” within the meaning of the TIF Act. 65 ILCS 5/11—74.4—3(a) (West 2006). At the time the TIF Act was enacted, farmland in agricultural production was specifically exempted from the definition of the term “vacant” in the TIF Act. 1961 Ill. Laws 576. Two subsequent amendments to the definition of “vacant” in the TIF Act have allowed for farmland that has been “subdivided” to qualify as “vacant” so that, if it also qualifies as “blighted,” as that term is defined in relation to vacant land in the TIF Act, it can become part of a TIF district. 65 ILCS 5/11—74.4—3(v) (West 2006). My search of the legislative history of these amendments in an effort to ascertain the reasoning behind carving out an exception for subdivided farmland reveals that the amendments were nothing short of special legislation designed to validate specific pork barrel TIF projects in Illinois. See, e.g., 88th Ill. Gen. Assem., Senate Proceedings, January 13, 1994, at 44 (statements of Senator Weaver) (explaining that an amendment to the definition of “vacant land” in the TIE Act “validates some annexations to a TIE district in Tuscola”). Nevertheless, the amendments exist and because the farmland at issue was “a larger tract that has been divided into 3 or more smaller tracts that were accepted for recording during the period from 1950 to 1990,” the 143 acres are deemed to have been subdivided and can be subject to a blight analysis as vacant property under the TIE Act. 65 ILCS 5/11—74.4—3(v) (West 2006). Having found that the land meets the statutory definition of “vacant,” Belleville found the area to be blighted because it found that the sound growth of the redevelopment project area is impaired by the fact that the area consists of one or more unused quarries, mines, or strip mine ponds. See 65 ILCS 5/11—74.4—3(a)(3) (West 2006). I would find that the plaintiff rebutted the presumption of the validity of that finding by clear and convincing evidence. The sound growth of this area was not impaired by the mine because the mine did not interfere with the land’s ability to be used as a productive and profitable farm. Harold Amann, a farmer whose family had leased and farmed the subject property for 50 years, testified that although mine subsidence had interfered with his ability to farm other parcels of land, there had never been subsidence conditions on the subject property and the mine did not interfere with his ability to farm the subject land profitably. Interestingly, the mine did not interfere with the residential development of the property, as a residential subdivision was built over the northern portion of the TIE district, which is also undermined. Although Belleville claims that its planning documents contemplate this area for commercial development, this court has held that the requirement that the development of a project area under the TIE Act be impaired does not mention, and does not contemplate, the anticipated growth necessarily being in conformity with the city’s comprehensive plan for development. Castel Properties, Ltd. v. City of Marion, 259 Ill. App. 3d 432, 442 (1994). Given the extensive evidence in the record that growth and development were occurring in the vast undermined areas surrounding the subject property and given the residential development that was occurring in the immediate vicinity, which is also undermined, I would find that the circuit court’s approval of the TIE ordinance at issue was against the manifest weight of the evidence. 2. Business District The Business District is the southern half of the TIE district, totaling approximately 70 acres. All of this 70 acres, except 2.5 acres where the farm buildings are located, and the intersection of Green Mount Road and Carlyle Avenue, consisted of producing farmland at the time the area was declared a business district. In order to declare this area a business district, Belleville was required to find that the predominance of various conditions on the property “retards the provision of housing accommodations or constitutes an economic or social liability or a menace to the public health, safety, morals, or welfare in its present condition and use.” (Emphasis added.) 65 ILCS 5/11—74.3—5(3) (West 2006). According to Belleville and the developer, this standard is met due to traffic safety concerns at the intersection, dilapidation and dumping on the 2.5 acres where the farm buildings are located, and the existence of the mine. The traffic concerns at the intersection and the dilapidation of the buildings and dumping on the 2.5 acres simply do not predominate the 70 acres that compose the business district. While the mine does predominate the 70 acres, it does not retard the provision of housing accommodations because the evidence shows that the 83 acres of the TIF district that developed residentially were developed despite the existence of the mine and without any remediation of the mine. Neither did the mine constitute an economic or social liability or a menace to the public health, safety, morals, or welfare in the condition and use of that portion of the business district that is undermined, because it was producing farmland and the evidence showed that the underground mine did not interfere with the use of the property as farmland. For these reasons, the plaintiff rebutted the presumption of validity of the business district ordinance by clear and convincing evidence, and the circuit court’s finding to the contrary was against the manifest weight of the evidence. 3. Economic Incentive Agreement The economic incentive agreement (EIA) covers the entire area of the TIF district. In order to have a valid EIA, the municipality must make specific findings based on whether the property is vacant or improved. 65 ILCS 5/8—11—20 (West 2006). As described above, only 2.5 acres of the TIF district and the intersection of Green Mount Road and Carlyle Avenue were improved at the time the ordinances were enacted. The remaining 143 acres were producing and profitable farmland at that time. The EIA ordinance found this land to be vacant. However, in contrast to the TIF Act, where “vacant” is specifically defined, “vacant” is not defined for purposes of the section of the Illinois Municipal Code that authorizes EIAs, and we must therefore look to its plain and ordinary meaning. See People v. Ward, 215 Ill. 2d 317, 325 (2005). It is appropriate to refer to a dictionary for this purpose. See People v. Beachem, 229 Ill. 2d 237, 244-45 (2008). In Merriam-Webster’s Collegiate Dictionary, “vacant” has a specific meaning in the context of land, which is “not put to use.” Merriam-Webster’s Collegiate Dictionary 1380 (11th ed. 2006). Pursuant to this definition, the 143 acres of profitable and producing farmland were not vacant or improved at the time the EIA ordinance was enacted. Unlike the TIF Act, no special legislation has been enacted to allow for profitable and producing farmland to be subject to an EIA. Because the overwhelming majority of the project area cannot qualify as an EIA, I would find that the plaintiff met his burden of challenging the ordinance by clear and convincing evidence, and the circuit court’s order upholding the ordinance is against the manifest weight of the evidence. CONCLUSION For the foregoing reasons, I find the TIF, Business District, and EIA ordinances enacted by the City of Belleville in this case to violate the letter and the spirit of the respective provisions of the Illinois Municipal Code. I would reverse the judgment of the circuit court of St. Clair County and would remand with directions that a judgment be entered in favor of the plaintiff, invalidating all three municipal ordinances at issue in this case.