NOTICE
Decision filed 05/22/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 220626-U

NO. 5-22-0626

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Douglas County. |
| | ) | |
| v. | ) | No. 17-CF-24 |
| | ) | |
| TYSON A. HAYS, | ) | Honorable |
| | ) | Richard L. Broch, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE SHOLAR delivered the judgment of the court.
Justices Cates and McHaney concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm the circuit court's calculation of defendant's credit against his sentence for the time that defendant spent confined in a substance abuse program prior to judgment.

¶ 2    The defendant, Tyson A. Hays, appeals the Douglas County circuit court's partial denial of credit against his sentence for a portion of the time that defendant spent in a residential substance abuse program. On appeal, defendant argues that he was entitled to credit for all of the time that he spent in the program. For the following reasons, we affirm the court's calculation.

¶ 3                                 I. BACKGROUND

¶ 4    On March 8, 2017, the Newman Police Department arrested defendant and took him into custody. On March 10, 2017, the State charged defendant by two count information. Count I alleged that defendant committed the offense of aggravated battery, a Class 2 felony, in violation

1

of section 12-3.05 of the Criminal Code of 2012. 720 ILCS 5/12-3.05(d)(4)(i) (West 2016). Count II alleged that defendant committed the offense of unlawful possession of methamphetamine, a Class 3 felony, in violation of section 60(a) of the Methamphetamine Control and Community Protection Act. 720 ILCS 646/60(a) (West 2016). Based on his prior criminal record, defendant was eligible for Class X sentencing on count I and for an extended term sentence on count II.[1]

¶ 5    On March 22, 2017, based upon a hold placed upon the defendant by the Illinois Department of Corrections and on the oral motion of defense counsel, defendant was remanded to the Illinois Department of Corrections to serve a sentence on an unrelated matter. After serving that sentence, defendant was returned to the Douglas County jail on November 6, 2017.

¶ 6    On January 8, 2018, defendant filed a "Motion for Pretrial Drug Rehabilitation." The circuit court took the matter under advisement that same day. On January 31, 2018, a letter from The Salvation Army was filed with the clerk of the circuit court. The letter stated that The Salvation Army had a bed available for defendant at their Adult Rehabilitation Center (hereinafter, ARC). The letter explained that the ARC program is a six month to one year program, and that the resident would be required to "attend individual and group counseling, participate in education groups which focus on Substance Abuse Prevention, Anger Management, Stress Reduction and Christian Living." Once "off restriction," residents were required to participate in outside meetings and attend chapel twice a week. Participants were subjected to random urinalysis for drug use and submitted to breath alcohol testing each day. Finally, participants were to participate in daily work therapy, but were not considered employees of The Salvation Army.

---

[1]On March 22, 2017, the State added count III, unlawful possession of weapons by a felon, a Class 3 felony, in violation of section 24-1.1(a) of the Criminal Code of 2012. 720 ILCS 5/24-1.1(a) (West 2016). Counts II and III were later dismissed pursuant to the plea agreement of the parties.

2

¶ 7    On March 13, 2018, the circuit court modified defendant's bond over the State's objection to allow him to "obtain in-house substance abuse rehabilitation" through the ARC program beginning on April 3, 2018. In its ruling, the court told defendant that he was to remain in the program until he was "properly released." The court further ordered the Douglas County Sheriff's Department to transport and release defendant to The Salvation Army facility in Springfield. The State asked that probation be allowed to monitor defendant's treatment, and that the sheriff's department "not be tasked with that transportation." The court granted both conditions at the State's request. The docket entry for that date further stated that "[s]hould Defendant leave the program prior to being released satisfactorily by his evaluator, he is to return immediately to the Douglas County Jail. Upon defendant's proper release from said facility, including his obtaining all necessary treatment pursuant to the standards of the facility, he shall upon his release at that time return to the Douglas County Jail." Defendant indicated that he understood the court's order. On April 3, 2018, defendant was released on a "recognizance" bond, with the added condition that "[u]pon leaving [r]ehab for any reason[,] you are to report [i]mmediately back to the Douglas County Jail." Defendant stayed at The Salvation Army until the date of his plea.

¶ 8    On June 27, 2019, defendant entered a guilty plea to count I, aggravated battery. Defendant was placed on probation for a period of 30 months and was sentenced to 180 days in the Douglas County jail, which was deemed satisfied by time served.

¶ 9    On July 8, 2020, the State filed a petition to revoke defendant's probation. Following a hearing on March 4, 2021, the circuit court found that defendant violated probation. On April 1, 2021, following a sentencing hearing, defendant was sentenced to eight years in the Illinois Department of Corrections to be followed by three years of mandatory supervised release. The circuit court awarded defendant credit for 157 days previously served in custody.

3

¶ 10    On December 31, 2021, defendant filed a *pro se* motion to modify sentence, which was denied as untimely on January 3, 2022. On January 13, 2022, defendant filed his "Writin [*sic*] Motion of Appeal for Sentence Credit." Both motions asked the circuit court to give him credit for the time that he spent in the Department of Corrections in an unrelated matter out of Piatt County. Defendant specifically asked for credit for time served from March 8, 2017 (the day he was originally arrested on the charge herein) through April 3, 2018 (the day that defendant was allowed to enter treatment at The Salvation Army rehab center in Springfield). The circuit court treated this as a motion to correct mittimus, and on February 9, 2022, entered a second amended judgment, giving defendant credit for 392 days served from March 8, 2017, through April 3, 2018.

¶ 11    Defendant filed another *pro se* "Motion to Amend and Correct Calculation of Mittimus" on February 22, 2022. In this motion, defendant asked for additional credit for time served for the time that he was in treatment with the ARC program, from April 3, 2018, through the date of his plea on June 27, 2019. In other words, defendant sought credit from the date of his arrest on March 8, 2017, through the date of his plea on June 27, 2019. To support his claim that he was entitled to the additional time when he was in treatment, defendant cited section 5-8-7 of the Unified Code of Corrections. 730 ILCS 5/5-8-7 (repealed by Pub. Act 95-1052, § 95 (eff. July 1, 2009)).[2]

¶ 12    The State filed a response to defendant's motion agreeing that he was entitled to credit for a portion of the time that he was being treated at The Salvation Army. Specifically, the State agreed that defendant should be given credit from the time that he was admitted into the program until he completed the ARC program on October 24, 2018. The State disagreed with defendant's contention that he should get credit for all of his time, arguing that defendant's time spent in the

---

[2]Section 5-8-7 was replaced by section 5-4.5-100(b) of the Unified Code of Corrections. 730 ILCS 5/5-4.5-100(b) (West 2010). Section 5-4.5-100(b) provides, in part, that the "trial court may give credit to the defendant for the number of days spent confined for psychiatric or substance abuse treatment prior to judgment, if the court finds that the detention or confinement was custodial." *Id.*

ARC program beyond October 24, 2018, was technically in violation of the court order allowing him to participate in the program. In support of its contention that defendant successfully completed the program on October 24, 2018, the State attached a letter from The Salvation Army dated April 3, 2019. In that letter, Jason Williams, the program coordinator for The Salvation Army, stated that defendant successfully completed the treatment program on October 24, 2018, and that defendant then continued to participate in the ARC's level 6 program. The letter described level 6 as being an optional level that is "used as a transitional level for participants to look for gainful employment and safe housing." The letter further stated that defendant remained in level 6 until he was hired by The Salvation Army ARC on January 2, 2019, and that defendant continued to reside at the center as an employee of The Salvation Army at the time of the letter.

¶ 13    Defendant filed a response, arguing that while at The Salvation Army, he was restricted to that facility, that he would have been arrested had he left that facility and not reported back to the Douglas County jail, and that he was subjected to the same restrictions (curfew, drug testing, counseling classes, treatment programs, etc.) the entire time that he was in the facility. In support of his claims, defendant submitted a second letter from Jason Williams dated April 22, 2022. The April 22, 2022, letter stated that defendant successfully completed the program on June 27, 2019, and further stated that defendant was not an employee of The Salvation Army. The letter also described the nature of the residential program and suggested that defendant was subjected to the requirements of the program for the entirety of his stay.

¶ 14    On June 28, 2022, the circuit court held a hearing on the motion. No witnesses were called by either side. Defendant argued that he was never released from the facility, that he could not leave the facility, and that he could not do anything without the permission of the administration or probation. Defendant further suggested that any issues with his custodial boundaries should

have been addressed then, and he would have come back to the Douglas County jail. "Instead, [he] still resided at the residence. [He] had the curfews, the same restrictions while [he] was living there. [He] did all the groups, the counseling, the treatment programs and everything. *** [He] was never released from his custodial boundaries."

¶ 15    The State countered that based upon the April 3, 2019, letter from The Salvation Army, defendant completed the ARC program on October 24, 2018. The State further argued that because of the transitional nature of the optional level 6, that defendant's participation thereafter was voluntary. The State acknowledged that defendant continued with the program, but argued that after October 24, it was a different phase of the program.

¶ 16    After considering the arguments of the parties, the circuit court noted that "according to the Court's strict order when you were to be released to the Salvation Army Program, that as soon as you had completed the mandatory treatment, you were to come back to the Douglas County jail. That was not done." The court also noted that "under the strict order from the Court, once you finish[ed] that mandatory ARC Program participation, anything after that the Court is looking at that you were voluntarily staying there because they were not making you stay there." The court acknowledged that defendant was doing well in the program during that time, and that is why the State took no action against defendant. Therefore, the court granted defendant credit for time served from April 3, 2018, to October 24, 2018, but not for any of the time thereafter.

¶ 17    Defendant filed a motion to reconsider. The circuit court held a hearing on the motion on September 12, 2022. The court considered the arguments of the parties, which reiterated the arguments made at the prior hearing. The court denied defendant credit for the time that he spent in the ARC program from October 25, 2018, through the date of his plea. This timely appeal followed.

6

¶ 18                              II. ANALYSIS

¶ 19    On appeal, defendant argues that he should be given credit for the entire time that he spent in the ARC program, or in the alternative, this matter should be remanded to the circuit court for a more thorough hearing pursuant to Illinois Supreme Court Rule 472 (eff. May 17, 2019). The State responds, arguing that defendant should not have received any credit toward his sentence for the time that he spent in the ARC program, because defendant was on a recognizance bond. The State further argues that defendant should not receive any additional credit for the time that he served in the ARC program. Finally, the State contends that this court should dismiss defendant's appeal for lack of jurisdiction, arguing that defendant has forfeited this issue by failing to raise it in his initial motion before the circuit court. For the reasons that follow, we affirm.

¶ 20    First, we address the State's argument that defendant's appeal should be dismissed for lack of jurisdiction, because defendant forfeited the issue of additional sentencing credit by failing to raise it in his initial motion to correct his sentence. The State argues that by failing to include his request for the additional time "in his first and only allowable motion under Rule 472," defendant forfeited this issue, and that this court is deprived of jurisdiction as a consequence. We disagree.

¶ 21    Pursuant to Illinois Supreme Court Rule 472, the "circuit court retains jurisdiction to correct the following sentencing errors at any time following judgment and after notice to the parties, including during the pendency of an appeal, on the court's own motion, or on motion of any party: *** (3) Errors in the calculation of presentence custody credit." Ill. S. Ct. R. 472(a)(3) (eff. May 17, 2019). The State is correct that Rule 472 suggests that a defendant is limited to only one postjudgment motion under the rule. The rule provides, in part, that "[w]hen a post-judgment motion has been filed by a party pursuant to this rule, any claim of error not raised in that motion shall be deemed forfeited." Ill. S. Ct. R. 472(c) (eff. May 17, 2019). The State is also correct that

7

defendant's first motion to correct his sentence made no mention of the alleged error that is currently before this court. In the proceedings in the circuit court, however, the State chose to not only respond to defendant's motion filed on February 22, 2022, but also conceded a portion of defendant's claim. The State could have raised the issue of forfeiture in the circuit court but did not do so. "Therefore, because forfeiture is ' "in the nature of an affirmative defense that the State may either raise, waive, or forfeit" ' (*People v. Blair*, 215 Ill. 2d 427, 442 (2005), quoting *People v. Stivers*, 338 Ill. App. 3d 262, 264 (2003)), the forfeiture argument is itself forfeited." *People v. Beachem*, 229 Ill. 2d 237, 241 n.2 (2008). Here, the court ruled on defendant's motion and on defendant's timely filed motion to reconsider the denial of that motion. At that time, the court's judgment became a final judgment subject to appeal. Ill. S. Ct. R. 472(b) (eff. May 17, 2019). For these reasons, we find that this court has jurisdiction, and that forfeiture should not be applied.

¶ 22    Turning to the merits of the case, defendant argues that the circuit court erred by denying him credit for the time he spent in the ARC program from October 25, 2018, through the time of his plea. The State disagrees and argues that defendant is not entitled to credit for this time period, because he was not legally entitled to credit for any of the time that defendant spent in the ARC program. Succinctly stated, the State argues that defendant's participation in treatment was voluntary, that the circuit court released defendant on a personal recognizance bond, and since defendant was no longer in custody, he is precluded from receiving credit against his sentence for his noncustodial treatment.

¶ 23    Addressing the State's argument requires us to construe section 5-4.5-100(b) of the Unified Code of Corrections. 730 ILCS 5/5-4.5-100(b) (West 2020). Our primary goal in statutory construction is to determine and give effect to the intent of the legislature. *Beachem*, 229 Ill. 2d at

8

243. The best indication of legislative intent is the language of the statute itself. *Id.* We must consider the statute as a whole rather than reading words and phrases in isolation. *Id.*

¶ 24 Section 5-4.5-100(b) provides instructions to the Illinois Department of Corrections and the court on how to calculate an offender's term of imprisonment. It reads as follows:

"CREDIT; TIME IN CUSTODY; SAME CHARGE. Except as set forth in subsection (e), the offender shall be given credit on the determinate sentence or maximum term and the minimum period of imprisonment for the number of days spent in custody as a result of the offense for which the sentence was imposed. The Department shall calculate the credit at the rate specified in Section 3-6-3 (730 ILCS 5/3-6-3). The trial court shall give credit to the defendant for time spent in home detention on the same sentencing terms as incarceration as provided in Section 5-8A-3 (730 ILCS 5/5-8A-3). Home detention for purposes of credit includes restrictions on liberty such as curfews restricting movement for 12 hours or more per day and electronic monitoring that restricts travel or movement. Electronic monitoring is not required for home detention to be considered custodial for purposes of sentencing credit. The trial court *may* give credit to the defendant for the number of days spent confined for psychiatric or substance abuse treatment prior to judgment, *if the court finds that the detention or confinement was custodial*." (Emphases added.) 730 ILCS 5/5-4.5-100(b) (West 2020).

¶ 25 The State argues that the statute involved in the denial of sentence credit for treatment during time spent on bond has already been decisively interpreted by the Illinois Supreme Court to be contrary to defendant's position. In support of its argument, the State relies upon *People v. Ramos*, 138 Ill. 2d 152 (1990), *People v. Beachem*, 229 Ill. 2d 237 (2008), and this court's decision in *People v. Donahue*, 2022 IL App (5th) 200274. We find the State's reliance on these cases to be misplaced.

¶ 26 Section 5-4.5-100(b) contains three directives: (1) it instructs the Department of Corrections that it shall give offenders credit on their sentences as specified in section 3-6-3 of the Unified Code of Corrections; (2) it instructs the trial court that it shall give offenders credit "for time spent in home detention on the same sentencing terms as incarceration as provided in Section 5-8A-3"; and (3) it instructs the trial court that it "may give credit to the defendant for the number

9

of days spent confined for psychiatric or substance abuse treatment prior to judgment, if the court finds that the detention or confinement was custodial." 730 ILCS 5/5-4.5-100(b) (West 2020).

¶ 27 The *Ramos* court was interpreting what is now the first directive of the statute (*Ramos*, 138 Ill. 2d at 156) and how that language applied to a defendant who was confined to his home as a condition of his bond (*id.* at 154). The *Beachem* court interpreted the same portion of the statute as the *Ramos* court (*Beachem*, 229 Ill. 2d at 244), but was confronted with a situation where the defendant was not released on bond (*id.* at 249), but was instead assigned to a program that required him to report to the Cook County Sheriff's Day Reporting Center (*id.* at 239). In *Donahue*, this court interpreted the second directive of section 5-4.5-100(b). *Donahue*, 2022 IL App (5th) 200274, ¶ 10 ("The dispositive issue in this case is whether the defendant was participating in a home detention program, such that he would be entitled to sentencing credit under section 5-4.5-100(b) of the Code of Corrections [citation]."). Unlike *Ramos*, *Beachem* and *Donahue*, the issue in this matter turns on the last sentence of section 5-4.5-100(b): "The trial court may give credit to the defendant for the number of days spent confined for psychiatric or substance abuse treatment prior to judgment, if the court finds that the detention or confinement was custodial." 730 ILCS 5/5-4.5-100(b) (West 2020).

¶ 28 A plain reading of section 5-4.5-100(b) demonstrates that the legislature has expressly granted the circuit court the discretion to allow a defendant credit for time spent in an inpatient substance abuse program if the court finds that the program was custodial. The fact that the provisions of the statute mandating sentence credit for time spent "in custody" appear in the very same subsection of the statute as the provision giving trial courts the discretion to grant defendants sentence credit for time spent in "custodial" psychiatric or substance abuse treatment (*id.*) indicates that the legislature made a deliberate choice to treat the two situations differently.

10

¶ 29    Having concluded that the statute gives the circuit court the authority to grant defendant credit for his time spent in the ARC program, we consider defendant's argument that the court erred by denying him credit for the time he time spent in the ARC program after October 24, 2018. In order to give a defendant credit for time spent in a psychiatric or substance abuse program, the circuit court must first determine whether the defendant's confinement in the program was custodial. *Id*. If the court finds that the detention was custodial, then the court may, *in its discretion*, grant the defendant credit for the time spent in the program. *Id.* Accordingly, we review the court's decision regarding the custodial nature of defendant's participation in the ARC program under the manifest weight of the evidence standard (see *People v. Gonzales*, 314 Ill. App. 3d 993, 999 (2000) (interpreting a prior version of section 5-8-7 that gave trial courts the discretion to award sentence credit for time spent in home detention if that time was found to be custodial)), and we will review the court's decision to deny defendant credit against his sentence for the time spent in the program under an abuse of discretion standard (*id.*).

¶ 30    Regarding the custodial nature of the ARC program, the circuit court was informed that the program lasted six months to one year, was residential in nature, and that the participants were required to "attend individual and group counseling, participate in education groups which focus on Substance Abuse Prevention, Anger Management, Stress Reduction and Christian Living." The court also knew that participants were subjected to random urinalysis for drug use and were required to submit to breath alcohol testing each day. The court had been informed that the participants participated in daily work therapy. Additionally, the court knew that once "off restriction," participants were required to participate in outside meetings and attend chapel twice per week. The requirements of the ARC program were in addition to the significant restriction

11

placed on defendant by the court itself, where if defendant left the program for any reason, he was required to immediately report back to the Douglas County jail.

¶ 31 Implicit in the circuit court's decision to grant defendant credit for time spent in the ARC program from April 3, 2018, through October 24, 2018, is a finding that the program was custodial in nature. "The definition of 'custody' is very expansive." *Beachem*, 229 Ill. 2d at 245. The term "custody" can encompass a broad range of state control, ranging from actual imprisonment to "constructive custody." *Id.* "Constructive custody" occurs when an individual's " 'freedom is controlled by legal authority' " even though he is not physically restrained. *Id.* (quoting Black's Law Dictionary 412 (8th ed. 2004)). Under the facts presented here, the court's determination that the ARC program was custodial in nature is not against the manifest weight of the evidence.

¶ 32 Defendant argues that since the circuit court gave him credit for time served from April 3, 2018, through October 24, 2018, he then must be given credit for all of the time that he spent in the ARC program. We disagree. As noted above, section 5-4.5-100(b) gives the circuit court the discretion to grant or deny an offender credit against his sentence for participation in such a program. 730 ILCS 5/5-4.5-100(b) (West 2020).

¶ 33 Accordingly, we consider whether the circuit court abused its discretion in denying defendant credit for the time he spent in the ARC program from October 25, 2018, through the date of his plea on June 27, 2019. Whether to award sentence credit for time spent confined is "a discretionary sentencing matter." *Gonzales*, 314 Ill. App. 3d at 999. "An abuse of discretion occurs where the circuit court's decision is arbitrary, unreasonable, or fanciful or where no reasonable person would have taken the position adopted by the circuit court." *People v. Heineman*, 2023 IL 127854, ¶ 59. The abuse of discretion standard has been viewed as the most deferential standard

of review available with the exception of no review at all. *People v. Coleman*, 183 Ill. 2d 366, 387 (1998).

¶ 34 During the hearing on defendant's "Motion to Amend and Correct Calculation of Mittimus," the State argued that defendant successfully completed the program on October 24, 2018, and that any time defendant spent participating in the optional part of the program thereafter was "voluntary." The circuit court agreed, noting that "according to the Court's strict order when you were to be released to the Salvation Army Program, that as soon as you had completed the mandatory treatment, you were to come back to the Douglas County jail. That was not done." The Court also noted that "under the strict order from the Court, once you finish that mandatory ARC program participation, anything after that the Court is looking at that you were voluntarily staying there because they were not making you stay there. You had completed the ARC program to their satisfaction. That's what the Court is dealing with here."

¶ 35 Defendant argues that the "voluntariness of [his] participation is irrelevant to whether he is entitled to receive sentence credit, particularly when both the State and the court approved [his] continued participation in the program beyond the original agreed-upon date." We agree that the voluntariness of defendant's participation in the program is irrelevant. The entirety of defendant's participation in the program was voluntary. He requested placement in the program. As we have noted, we disagree with defendant's argument that he is *entitled* to any credit for participation in a pretrial substance abuse program that the circuit court found to be custodial in nature. That is left to the sound discretion of the trial court. 730 ILCS 5/5-4.5-100(b) (West 2020).

¶ 36 At the hearing on defendant's motion to be released for treatment, the circuit court stated that "[u]pon [defendant's] proper release from said facility indicating that he has completed all necessary treatment pursuant to the standards of the facility that he is then to be released at that

time to return to the Douglas County Jail." Defendant indicated that he understood the court's order. We acknowledge that defendant was allowed to remain in the program past his successful completion of the ARC program on October 24, 2018, and that this was permitted with the tacit permission of the State and the court. Nevertheless, given the fact that defendant entered into an optional, and not necessary, portion of his treatment at that time is certainly a factor that the court could consider in exercising its discretion as to whether or not to grant defendant credit against his sentence for that portion of his treatment. That the court granted defendant's motion in part and denied his motion in part is proof that the court understood that it had the discretion to grant or deny defendant's request for credit against his sentence. As such, we cannot find that the court's denial of defendant's request for credit from October 25, 2018, through the date of his plea was an abuse of discretion.

¶ 37   Finally, as an alternative to this court modifying the judgment to grant defendant an additional 246 days against his sentence, defendant asks that this court remand this matter to the circuit court for a more thorough hearing under Rule 472. We decline to do so. It is apparent that the court understood the law and exercised its discretion in granting defendant's motion in part and denying defendant's motion in part.

¶ 38                                    III. CONCLUSION

¶ 39   For the foregoing reasons, we affirm the Douglas County circuit court's determination as to the amount of credit for which defendant is entitled to as a result of his participation in the ARC program.

¶ 40   Affirmed.

14