2023 IL App (2d) 220345-U
No. 2-22-0345
Order filed June 1, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16-CF-139 |
| LARRY R. LOTZ, | ) ) | Honorable Daniel B. Shanes, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE JORGENSEN delivered the judgment of the court.
Presiding Justice McLaren and Justice Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's pretrial home confinement while released on bond was not "home detention" that would qualify for sentencing credit, because the confinement's terms and conditions were set by the trial court, which was not a "supervising authority" per the definition of "home detention."   Even if defendant had not forfeited any argument that the 2021 amendments to the governing statutes qualified him for sentencing credit, we would hold that the amendments did not apply retroactively to defendant's sentence.

¶ 2    Defendant, Larry R. Lotz, appeals from an order of the circuit court of Lake County denying his motion seeking sentencing credit for days spent on electronic home monitoring (EHM) and under a 24-hour curfew.  He argues that he is entitled to sentencing credit under section 5-4.5-

100(b) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5-4.5-100(b) (West 2018)), which requires credit "for time spent in home detention." We affirm.

¶ 3                                I. BACKGROUND

¶ 4    On January 15, 2016, defendant shot and killed his wife of 40 years. He was taken into custody that day and later indicted on three counts of first-degree murder under various theories (720 ILCS 5/9-1(a)(1), (2), (3) (West 2016)). Bond was set at $3 million, with defendant required to pay 10%. Additional conditions included: "[Defendant] shall be monitored by pretrial bond services and pay $100 fee—no alcohol—no drugs—random testing at discretion of pretrial—24 hour curfew—refrain from possessing a firearm or other dangerous weapons—surrender passport[.]"

¶ 5    On May 2, 2016, defendant's sons posted a $300,000 cash bond, and defendant was released. The bail bond order, which defendant signed, provided that, immediately following his release, defendant "shall [r]eport to the Pretrial Bond Supervision Unit of the Lake County Court Probation Department [(the probation department)] and follow all the rules and conditions of the Pretrial bond release program[.]" In addition, the bail bond order provided that defendant was required to (1) submit to random drug and alcohol testing, (2) refrain from possessing or consuming drugs and alcohol, (3) abide by a 24-hour curfew, (4) refrain from possessing firearms or weapons, and (5) surrender his passport to the clerk.

¶ 6    On May 3, 2016, the State filed a motion to modify defendant's bond. The State noted that defendant's bond required that he be monitored by the probation department and abide by a 24-hour curfew. The State requested that defendant additionally be placed on EHM. Defendant filed a response, objecting to EHM. The response noted that defendant was hospitalized upon his release from custody. The response further noted that "[d]efendant agrees with the conditions of

the bond that were set at the preliminary hearing stage and [has] complied with all terms of the bond set by the preliminary hearing judge."

¶ 7 The State and defense counsel appeared before the trial court on May 5, 2016, and May 12, 2016. Defense counsel advised the court at each appearance that defendant was in the hospital with no imminent discharge date. The State expressed concern over the fact that the probation department was unable to have contact with defendant. The court commented:

"He is in a hospital. [The probation department] is monitoring it.

Let me make something else clear. The Court's order on bond is that since the Defendant has posted on the previously set three million dollar bond, that he is to comply with all conditions of [the probation department], along with all of the other conditions of bond which the Court has imposed, which means that if he is not in the hospital, at some point when he's not in the hospital, if [the probation department] wants him to come in every day, he comes in every day. If [the probation department] wants to stop by wherever he is living ten times a day, he answers the door ten times a day.

[The probation department] has the discretion to monitor him as they deem fit based upon the evidence based practices employed by the Lake County Circuit Court, which includes the risk assessment and other instruments that we use.

So, I understand what ordinarily might happen with levels of monitoring and people's risk assessment, and I also understand what the charges are. [The probation department] in Lake County has an excellent record of doing what needs to be done to monitor people."

The court continued the matter for a hearing on the State's motion. The court instructed defense counsel that, within 24 hours of defendant's release from the hospital, defendant was to report to court.

¶ 8    On May 23, 2016, defendant was released from the hospital. The next day, the court heard the parties' arguments on the State's motion to modify defendant's bond. Defendant advised the trial court that he was living at his son's house and had already legally changed his "IDs, [his] driver's license, everything to that address." Defense counsel informed the court that all firearms had been removed from the residence and that "[t]he family can have somebody with *** defendant 24-hours a day as well." Defense counsel raised the possibility that an electronic monitor would interfere with certain medical tests. The court continued the matter until the next day for the parties to obtain "[the probation department's] perspective on monitoring the defendant at the son's house with the efficacy of the [electronic] monitor and the defendant's ability to pursue testing and treatment with the monitor." The court told defendant that he was under 24-hour curfew and not allowed to leave his son's home.

¶ 9    The parties returned the next day. Defense counsel advised the trial court that the probation department could monitor defendant at his son's house because it was in the "Lake County portion of Barrington." Defense counsel also advised the court that the electronic monitoring unit could be removed for a particular medical test if necessary. The court then advised defendant:

> "Having reviewed the matter, I still think the appropriate bond is $3 million which
>
> is a lot of money which you and your family have apparently come up with and you posted.
>
> That's how our constitution works. I'll continue to allow you to live with your son. It's in
>
> Lake County. It's fine. Same as many, many other people who are dealing with criminal
>
> charges. You will still be allowed to seek treatment so long as it complies with the bond

conditions. And at least for me constitutionally, more important, be able work with your legal counsel to investigate and prepare a defense should this case go to trial. As [defense counsel] took great pains to point out a number of times that involves evaluations and assessments.

As a condition of bond, the Court will order that you comply with [EHM]. As I told you yesterday, I expect you to be at home unless you are at an approved/preapproved location for treatment, for an evaluation to prepare your defense in this case. [The probation department] will work with you, like they do everybody else, to know where you are when a person's not in jail and monitor your compliance with the bond conditions."

Thereafter, the following colloquy occurred:

"THE COURT: ***

So, bottomline [*sic*], rules you need to know on the ground: You are to be at home.

THE DEFENDANT: In the house?

THE COURT: In the house, 24 hours a day, seven days a week unless you are— you have permission ahead of time to be at the doctor or get an evaluation; whatever the specific thing is, preapproved ahead of time. That is a very important part of this.

THE DEFENDANT: Okay.

THE COURT: [The probation department] will go over all the details of this with you.

THE DEFENDANT: I spoke with my parole officer yesterday. He said as long as I call and tell him when the appointment is and get a validation from the doctor that I can fax to him and call him when I get home.

THE COURT: That is the typical way they do it. Whatever they tell you to do, you do.

THE DEFENDANT: Yes, sir.

THE COURT: Okay. All the other orders, including defendant not to be in possession of firearm or dangerous weapons, remain in effect. That includes anywhere in the house in which he's residing. You've already accomplished that. All the other usual bond conditions also remain in effect."

¶ 10 On August 28, 2019, following a bench trial, the trial court found defendant guilty of second-degree murder (720 ILCS 5/9-2(a)(2) (West 2016)). On November 6, 2019, the court sentenced him to 16 years' imprisonment. The court awarded defendant sentencing credit for 178 days spent in presentencing custody: January 15, 2016, through May 2, 2016, and August 28, 2019, through November 6, 2019. The court did not include the time defendant was released on bond.

¶ 11 Following the denial of his motion to reduce his sentence, defendant timely appealed. On appeal, defendant argued that his 16-year sentence was excessive. We affirmed. See *People v. Lotz*, 2021 IL App (2d) 191073-U.

¶ 12 On July 21, 2022, defendant filed an "Amended Motion for Credit for Time Served." Defendant argued that he was entitled to sentencing credit under section 5-4.5-100(b) of the Unified Code (730 ILCS 5/5-4.5-100(b) (West 2018)) for time spent on EHM and "home detention."

¶ 13 Following a hearing on September 7, 2022, the trial court, relying on *People v. Donahue*, 2022 IL App (5th) 200274, found that defendant was not entitled to sentencing credit under section 5-4.5-100(b) of the Unified Code for time spent released on bond between May 2, 2016, and August 28, 2019. This timely appeal followed.

¶ 14                                    II. ANALYSIS

¶ 15    Defendant argues that he is entitled to sentencing credit for time spent on EHM under a 24-hour curfew, based on section 5-4.5-100(b) of the Unified Code (730 ILCS 5/5-4.5-100(b) (West 2018)), which requires sentencing credit "for time spent in home detention." The State responds that, under *Donahue*, defendant is not entitled to sentencing credit, because he was on "home supervision" (725 ILCS 5/110-10(b)(14) (West 2018)) as a condition of his bail bond rather than "home detention." We consider the issue *de novo*. See *Donahue*, 2022 IL App (5th) 200274, ¶ 10.

¶ 16    We first set forth the language of the relevant statutory provisions. At the time of defendant's sentencing, section 5-4.5-100(b) of the Unified Code (730 ILCS 5/5-4.5-100(b) (West 2018)) provided as follows:

"(b) CREDIT; TIME IN CUSTODY; SAME CHARGE. Except as set forth in subsection (e), the offender shall be given credit on the determinate sentence or maximum term and the minimum period of imprisonment for the number of days spent in custody as a result of the offense for which the sentence was imposed. The Department shall calculate the credit at the rate specified in Section 3-6-3 (730 ILCS 5/3-6-3 [(West 2018)]). *Except when prohibited by subsection (d),*[1] *the trial court shall give credit to the defendant for time spent in home detention on the same sentencing terms as incarceration as provided in Section 5-8A-3* [(730 ILCS 5/5-8A-3 (West 2018))]. The trial court may give credit to the defendant for the number of days spent confined for psychiatric or substance abuse treatment prior to judgment, if the court finds that the detention or confinement was custodial." (Emphasis added.)

_____

[1]It is undisputed that subsection (d) does not apply here.

Section 5-8A-3(a) of the Electronic Monitoring and Home Detention Law (Home Detention Law) (see 730 ILCS 5/5-8A-1 *et seq.* (West 2018)), referenced in section 5-4.5-100(b) of the Unified Code, determines when a "home detention program" is appropriate. See *id.* § 5-8A-3(a). Section 5-8A-4 of the Home Detention Law, entitled "[p]rogram description," states: "The supervising authority may promulgate rules that prescribe reasonable guidelines under which an electronic monitoring and home detention program shall operate." *Id.* § 5-8A-4. The Home Detention Law defines "[h]ome detention" as "the confinement of a person convicted or charged with an offense to his or her place of residence under the terms and conditions established by the supervising authority." *Id.* § 5-8A-2(C). It defines "[s]upervising authority" as "the Department of Corrections, the Department of Juvenile Justice, probation department, sheriff, superintendent of municipal house of corrections or any other officer or agency charged with authorizing and supervising electronic monitoring and home detention." *Id.* § 5-8A-2(E).

¶ 17    The issue here is whether defendant was on "home detention" for purposes of receiving sentencing credit under section 5-4.5-100(b) of the Unified Code (730 ILCS 5/5-4.5-100(b) (West 2018)). We agree with the trial court that, under *Donahue*, he was not. In *Donahue*, the defendant was released on a bail bond with terms imposed by the trial court, which placed him on EHM and required him to remain in his residence (with exceptions for work or other approved reasons). *Donahue*, 2022 IL App (5th) 200274, ¶ 4. The Fifth District Appellate Court held that the defendant was not entitled to sentencing credit for his time while released on bond, because he was on "home supervision" under the bail provisions of section 110-10(b)(14) of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-10(b)(14) (West 2018)) rather than "home detention" under section 5-4.5-100(b) of the Unified Code (730 ILCS 5/5-4.5-100(b) (West 2018)). *Donahue*, 2022 IL App (5th) 200274, ¶¶ 10-24, 32. The court determined that "home supervision pursuant to a

bail agreement is distinct from home detention under the Home Detention Law." *Id.* ¶ 28; see also *People v. Smith*, 2014 IL App (3d) 130548, ¶ 35 (holding that "home confinement pursuant to an appeal bond does not qualify as custody entitling one to credit against his sentence under the statute"). We agree with *Donahue*'s reasoning and conclusion.

¶ 18    Defendant's attempt to distinguish *Donahue* is unpersuasive. Defendant argues that, unlike the *Donahue* defendant, he "was not allowed to work" and EHM was "ordered over his objection." However, as the trial court noted in denying defendant's motion for additional sentencing credit, defendant was retired; thus, "[t]o the extent that he didn't go to work, it's a function of he didn't have work to go to." In addition, the court rejected defendant's claim that he did not agree to the bond conditions. It found that "to the extent that *** defendant's agreement matters," defendant agreed to the bond conditions implicitly, by not exonerating the bond, and explicitly, by signing the bail bond order. We agree.

¶ 19    In addition, defendant emphasizes that he "was advised to be in the home, 'not the yard[,]' with a 24 hours [*sic*] curfew." Thus, according to defendant, he was under " '[h]ome detention' " in that he was "confine[d] *** to his *** place of residence." See 730 ILCS 5/5-8A-2(C) (West 2018). To be sure, as a condition of his bail bond, defendant was subject to EHM and required to remain in his residence under a 24-hour curfew with limited exceptions. Arguably, then, he was confined to his place of residence. However, even if we were to disagree with *Donahue*'s conclusion that releasing a defendant on bond with the condition that he remain in his home does not equate to "home detention" for purposes of sentencing credit (see *Donahue*, 2022 IL App (5th) 200274, ¶ 24), defendant fails to acknowledge that the definition of " '[h]ome detention' " also requires that the "confinement" be "under the terms and conditions established by the supervising authority" (see 730 ILCS 5/5-8A-2(C) (West 2018)).

¶ 20    In *Smith*, in addition to holding that the defendant's home confinement while released on an appeal bond did not qualify as "custody" for purposes of sentencing credit under section 5-4.5-100(b) of the Unified Code, the court also rejected the defendant's argument that his home confinement while released on bond equated to "home detention" under that same section. *Smith*, 2014 IL App (3d) 130548, ¶¶ 40, 43. Examining the Home Detention Law's plain language, the court noted that "[t]o satisfy the definition of home detention, the confinement must be 'under the terms and conditions established by the supervising authority.' " *Id.* ¶ 42 (quoting 730 ILCS 5/5-8A-2(C) (West 2012)). The court observed that the defendant's confinement was supervised by a private traffic school, which was not a "supervising authority" under the Home Detention Law. *Id.* ¶¶ 41-42 (citing 730 ILCS 5/5-8A-2(E) (West 2012)). Moreover, even if the defendant's home confinement was supervised by the probation department (as the defendant claimed), "[i]t was the trial court that 'established' the 'terms and conditions' of [the] defendant's release." *Id.* ¶ 43. Thus, as the trial court was not a "supervising authority" under the statute, the defendant's home confinement while released on bond did not meet the definition of "home detention." *Id.* ¶ 42.

¶ 21    Similarly, in *Donahue*, in addition to holding that the defendant was not entitled to sentencing credit because he was on "home supervision" rather than "home detention," the court held further that, even if it accepted an "equivalence between home supervision as a condition of a pretrial bond and home detention" (*Donahue*, 2022 IL App (5th) 200247, ¶ 29), "the defendant was not on 'home detention' under the statute because it was the trial court, not the probation department, that established the terms and conditions of his bond, including the condition of [EHM]." *Id.* ¶ 32. The court concluded: "Without being placed into a pretrial [EHM] by a supervising authority, the defendant cannot maintain that he was on 'home detention' pursuant to

the Home Detention Law. As a result, the defendant is not entitled to sentencing credit under section 5-4.5-100(b) of the [Unified] Code." *Id.*

¶ 22    So too, here. Although the probation department (a "supervising authority" under the Home Detention Law (see 730 ILCS 5/5-8A-2(E) (West 2018))) supervised defendant, it was the trial court, not the probation department, that established the bond's terms and conditions, which included EHM and a 24-hour curfew. Based on *Smith* and *Donahue*, defendant's home confinement was not "home detention" under the Home Detention Law's plain language, because the terms and conditions of that confinement were imposed by the trial court, which is not a "supervising authority" (see *id.*). Thus, defendant was not entitled to sentencing credit for the time spent released on bond.

¶ 23    We note that the legislature amended section 5-4.5-100(b) of the Unified Code effective July 1, 2021. See Pub. Act 101-652, § 10-281 (eff. July 1, 2021) (amending 730 ILCS 5/5-4.5-100)). It now provides:

> "(b) CREDIT; TIME IN CUSTODY; SAME CHARGE. Except as set forth in subsection (e), the offender shall be given credit on the determinate sentence or maximum term and the minimum period of imprisonment for the number of days spent in custody as a result of the offense for which the sentence was imposed. The Department shall calculate the credit at the rate specified in Section 3-6-3 (730 ILCS 5/3-6-3). The trial court shall give credit to the defendant for time spent in home detention on the same sentencing terms as incarceration as provided in Section 5-8A-3 (730 ILCS 5/5-8A-3). *Home detention for purposes of credit includes restrictions on liberty such as curfews restricting movement for 12 hours or more per day and electronic monitoring that restricts travel or movement. Electronic monitoring is not required for home detention to be considered custodial for*

- 11 -

*purposes of sentencing credit.* The trial court may give credit to the defendant for the number of days spent confined for psychiatric or substance abuse treatment prior to judgment, if the court finds that the detention or confinement was custodial." (Emphasis added.) 730 ILCS 5/5-4.5-100(b) (West 2020).

¶ 24 The definitions of "[h]ome detention" and "[s]upervising authority" (Pub. Act 101-652, § 10-281 (eff. July 1, 2021) (amending 730 ILCS 5/5-8A-2)) were also amended at that time and now provide:

" 'Home detention' means the confinement of a person convicted or charged with an offense to his or her place of residence under the terms and conditions established by the supervising authority. *Confinement need not be 24 hours per day to qualify as home detention, and significant restrictions on liberty such as 7pm to 7am curfews shall qualify. Home confinement may or may not be accompanied by electronic monitoring, and electronic monitoring is not required for purposes of sentencing credit.*" (Emphasis added.) 730 ILCS 5/5-8A-2(C) (West 2020).

" 'Supervising authority' means the Department of Corrections, the Department of Juvenile Justice, probation department, *a Chief Judge's office, pretrial services division or department*, sheriff, superintendent of municipal house of corrections or any other officer or agency charged with authorizing and supervising electronic monitoring and home detention." (Emphasis added.) *Id.* § 5-8A-2(E).

¶ 25 Although defendant references the 2021 amended version of section 5-4.5-100(b) of the Unified Code in his opening brief, he does not claim that it applies to him retroactively. (He does *not* reference the amended definitions of "home detention" or "supervising authority.") Indeed, in his reply brief, he expressly states that "[t]his [c]ourt need not utilize the 2021 amendment" to

section 5-4.5-100(b), because the prior version was "sufficiently clear" that he was under "home detention." Thus, defendant has forfeited any claim that the 2021 amendments to sections 5-4.5-100(b), 5-8A-2(C), and 5-8A-2(E) apply retroactively. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("[p]oints not argued are forfeited"); *Vancura v. Katris*, 238 Ill. 2d 352, 369 (2010) ("[T]his court has repeatedly held that the failure to argue a point in the appellant's opening brief results in forfeiture of the issue.").

¶ 26    Forfeiture aside, we agree with the State that, even if we were to conclude that the 2021 amendments can be read as now requiring credit against a defendant's sentence for "pre-trial home supervision as a condition of bond[,]" the amendments do not apply retroactively to defendant.[2]

¶ 27    We find guidance in *People v. Carter*, 2022 IL App (1st) 210261, ¶¶ 138-39, which concerned a 2021 amendment to section 5-4.5-100 that removed the restriction against credit for time spent in home detention by a defendant convicted of criminal sexual assault (see Pub. Act 101-652, § 10-281 (eff. July 1, 2021) (amending 730 ILCS 5/5-4.5-100)). The issue in *Carter* was whether the amendment applied retroactively to the defendant and so granted him credit previously denied. *Carter*, 2022 IL App (1st) 210261, ¶¶ 137, 139. The court held that the amendment did not apply retroactively. *Id.* ¶ 147. The court noted first that the amendment did not "suggest[ ] *** a specific temporal reach." *Id.* ¶ 145. Thus, "[the amendment's] temporal reach [was] provided by default according to section 4 of the Statute on Statutes [(5 ILCS 70/4 (West 2020)]." *Id.* The court noted that, under section 4, " 'a punishment mitigated by a new law is applicable only to judgments after the new law takes effect.' " *Id.* ¶ 146 (quoting *People v. Hansen*, 28 Ill. 2d 322, 341 (1963)). Because the amendment had "a mitigating effect on the punishment for

_____

    [2] Because the amended statute does not apply, we need not decide whether a trial judge is a supervising authority.

defendants imprisoned for criminal sexual assault" (*id.* ¶ 147) by lifting the bar against sentencing credit for their home detention, the amendment applied only to judgments entered after it took effect. *Id.* Likewise, if the amendments in question here have the mitigating effect defendant claims, section 4 of the Statute on Statutes would make them inapplicable to him, because he was sentenced before they went into effect. See *id.*; 5 ILCS 70/4 (West 2018).

¶ 28                                                    III. CONCLUSION

¶ 29     For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 30     Affirmed.