# Illinois Official Reports

## Appellate Court

***People v. Smith*, 2014 IL App (3d) 130548**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JASON E. SMITH, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-13-0548 |
| Filed | June 23, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where the trial court granted defendant's request to be released to home confinement on a bond pending the conclusion of his appeal from his convictions on two counts of aggravated DUI and one count of misdemeanor DUI, his motion for sentencing credit for the time he spent released on bond was properly denied, since the home confinement did not constitute custody for which sentencing credit could be granted. |
| Decision Under Review | Appeal from the Circuit Court of Grundy County, No. 09-CF-189; the Hon. Lance R. Peterson, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Jeffery J. Tomczak (argued), of Law Office of Jeff Tomczak, of Joliet, for appellant.

Jason Helland, State's Attorney, of Morris (Mark A. Austill (argued), of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE SCHMIDT delivered the judgment of the court, with opinion.
Justices McDade and O'Brien concurred in the judgment and opinion.

## OPINION

¶ 1    The State charged and convicted the defendant, Jason Smith, with two counts of felonious aggravated driving under the influence (625 ILCS 5/11-501(a)(4), (a)(5), (d)(1)(C), (d)(2)(F) (West 2008)) and one count of misdemeanor driving under the influence (625 ILCS 5/11-501(a)(6) (West 2008)). The trial court found the counts merged into the most serious offense and sentenced defendant to three years' incarceration. The court released defendant on bond pending the resolution of his direct appeal. This court affirmed defendant's conviction and sentence. *People v. Smith*, 2013 IL App (3d) 120149-U. Thereafter, defendant moved for sentencing credit for the time he spent released pending the conclusion of his appeal. Defendant claimed that the conditions of his release entitled him to day-for-day credit against his three-year sentence of incarceration. The trial court denied defendant's motion and remanded him to the custody of the Illinois Department of Corrections. Defendant appeals that ruling, claiming the trial court erred when finding his time spent released on bond pending appeal did not entitle him to credit against his sentence of incarceration.

¶ 2                                    BACKGROUND

¶ 3    The facts of this matter are not in dispute. Witnesses testified that they observed defendant traveling at approximately 90 miles per hour on Interstate 80 at 5:30 a.m. in December of 2009. After swerving from the shoulder toward the left-hand lane, defendant's vehicle collided with another, forcing the other vehicle into a ditch. An emergency room physician treated defendant following the accident, collecting blood in the process. The blood, collected at 6:43 a.m., indicated a blood alcohol content of .067. Urine collected at 7:40 a.m. following the accident tested positive for cannabis, amphetamines, and phenylpropanol.

¶ 4    A jury convicted the defendant in January of 2011 of driving under the influence (625 ILCS 5/11-501(a)(4), (a)(5) (West 2008)) and sentencing took place in October of 2011. On October 20, 2011, the trial court sentenced defendant to three years' incarceration. The State

took defendant into custody on October 27, 2011. Defendant filed a timely motion to reconsider sentence, as well as a motion for release pending the conclusion of his appeal. The trial court denied defendant's motion to reconsider sentence, but ultimately granted defendant's motion for release.

¶ 5    The order granting defendant's motion for release states as follows:

> "Standard conditions of bond apply except that the Defendant is allowed to travel to Wisconsin and Indiana for Work/Apprenticeship Program only.
>
> Special Conditions of Appellate Bond:
>
> (1) Defendant is on home confinement and may leave only for Work/ Apprenticeship Program.
>
> (2) Defendant must maintain a SCRAM/GPS monitoring bracelet at all times, to be monitored by the Grundy County Probation Department.
>
> (3) Defendant is to consume no alcohol.
>
> (4) Defendant is not permitted to drive a motor vehicle.
>
> (5) Defendant is to remain enrolled in the Apprenticeship Program. If he is no longer enrolled in the Apprenticeship Program he is to notify the State's Attorney's Office or Probation Department within 48 hours of the disenrollment.
>
> (6) Defendant will reside at 1315 Susan Circle, Morris, IL 60450.
>
> Bond is set in the amount of $30,000.00, 10% to apply."

¶ 6    Upon learning that the probation department did not have the ability to monitor defendant as directed, the trial court modified its order, noting defendant "is to be at his residence from 7 pm Mon to 4am Tues, 7 pm Tues to 4 am Wed, 7 pm Wed to 4 am Thurs, 7 pm Thur to 4 am Fri and 7 pm Fri to 4 am Mon. SCRAM to be monitored by the Traffic School for behavior change."

¶ 7    On May 14, 2013, this court affirmed defendant's conviction and sentence. *Smith*, 2013 IL App (3d) 120149-U. Thereafter, defendant filed a motion to amend the mittimus to reflect credit for "time served pursuant to 730 ILCS 5/4-4.5-100." In his motion, defendant argued he was entitled to credit against his sentence for each day that he was released on the appeal bond. The trial court denied defendant's motion on June 21, 2013. Defendant filed a motion to reconsider, which the trial court denied via minute order on July 9, 2013, and written order on July 11, 2013. Defendant filed his notice of appeal on July 24, 2013. This appeal followed.

¶ 8                                    ANALYSIS

¶ 9    Defendant argues that the trial court erred in "refusing to give defendant credit for his time spent in home confinement on appellate bond." Defendant's argument is based on his interpretation of section 5-4.5-100 of the Unified Code of Corrections (the Code) (730 ILCS 5/5-4.5-100 (West 2012)), as well as his analysis of two supreme court cases: *People v. Beachem*, 229 Ill. 2d 237 (2008), and *People v. Ramos*, 138 Ill. 2d 152 (1990). As the resolution of this appeal requires us to interpret the language of the sentencing credit statute, our review is *de novo*. *People v. Beachem*, 229 Ill. 2d at 243.

¶ 10    Section 5-4.5-100 of the Code became effective on July 1, 2009. See Pub. Act 95-1052 (eff. July 1, 2009) (repealing 730 ILCS 5/5-8-7 and adding 730 ILCS 5/5-4.5-100). As such,

it has been effective from five months prior to defendant committing this crime until today. The statute has been amended twice since its inception. See Pub. Act 96-1000 (eff. July 2, 2010); Pub. Act 97-697 (eff. June 22, 2012).

¶ 11    In December of 2009, when defendant committed this crime, section 5-4.5-100 stated as follows:

> "(a) COMMENCEMENT. A sentence of imprisonment shall commence on the date on which the offender is received by the Department or the institution at which the sentence is to be served.
>
> (b) CREDIT; TIME IN CUSTODY; SAME CHARGE. The offender shall be given credit on the determinate sentence or maximum term and the minimum period of imprisonment for time spent in custody as a result of the offense for which the sentence was imposed, at the rate specified in Section 3-6-3 (730 ILCS 5/3-6-3). Except when prohibited by subsection (d), the trial court may give credit to the defendant for time spent in home detention, or when the defendant has been confined for psychiatric or substance abuse treatment prior to judgment, if the court finds that the detention or confinement was custodial." 730 ILCS 5/5-4.5-100 (West 2008).

¶ 12    The 2010 amendments to the statute did not significantly change the wording relevant to this appeal. See Pub. Act 96-1000 (eff. July 2, 2010).

¶ 13    The most recent amendments, however, which became effective June 22, 2012, changed the statute as follows:

> "(b) CREDIT; TIME IN CUSTODY; SAME CHARGE. Except as set forth in subsection (e), the offender shall be given credit on the determinate sentence or maximum term and the minimum period of imprisonment for the number of days time spent in custody as a result of the offense for which the sentence was imposed. *** [T]he trial court shall may give credit to the defendant for time spent in home detention on the same sentencing terms as incarceration as provided in Section 5-8A-3 (730 ILCS 5/5-8A-3)." Pub. Act 97-697 (eff. June 22, 2012).

¶ 14    Defendant argues that the legislature's latest amendment evinces its long held belief that defendants released under the condition of home confinement are entitled to the same credit for time served as those sitting in a county jail who could not secure their release. As noted above, to further support his contention that his release pending appeal equates to custody under the Code, defendant cites to *Ramos* and *Beachem*. We find both cases support affirmation of the trial court's order.

¶ 15                                      A. *Ramos*

¶ 16    In *Ramos*, the State charged defendant with residential burglary. *Ramos*, 138 Ill. 2d at 153. Following his arrest, defendant posted bond and was released. A condition of the bond included home detention. *Id.* Defendant pled guilty to the offense, and the trial court sentenced him to four years' imprisonment. *Id.* Defendant moved, pursuant to section 5-8-7(b) of the Code (Ill. Rev. Stat. 1987, ch. 38, ¶ 1005-8-7(b)), for a finding that he was entitled to credit against his sentence for time spent in pretrial release, which carried with it the condition of home confinement. *Ramos*, 138 Ill. 2d at 153.

¶ 17    The trial court denied defendant's motion, finding he was not entitled to credit for time released on bond prior to his sentencing. *Id.* This court reversed the trial court's decision,

noting that defendant "was permitted to leave his confinement only with the consent of the court or his probation officer. *** Moreover, [defendant] was not permitted to work or to attend school. Though it may not have amounted to imprisonment, Ramos' home detention was not far from it." *People v. Ramos*, 181 Ill. App. 3d 1062, 1065 (1989). Therefore, this court concluded "that during his home detention the defendant was in custody for purposes of sentence credit, and the circuit court erred in holding otherwise." *Id.* Our supreme court disagreed.

> "The State contends that the phrase 'time spent in custody,' as used in section 5-8-7(b), does not include the period of time during which a defendant is released on bond, regardless of the restrictions that might be imposed as conditions of release. Relying on this court's decision in *People ex rel. Morrison v. Sielaff* (1974), 58 Ill. 2d 91, the State argues that the legislature intended in section 5-8-7(b) to distinguish institutional custody from release on bond and to allow sentencing credit for only the former. The State maintains that defendant was released from institutional custody when he was admitted to bond and that home detention was merely a condition of release and did not constitute custody within the meaning of the statute. We agree." *Ramos*, 138 Ill. 2d at 156-57.

¶ 18 The *Ramos* court then recapped its holding in *Morrison*, noting that the *Morrison* court ruled "that the period of pretrial release was not 'time spent in custody' within the contemplation of section 5-8-7(b)." *Id.* at 157. The *Morrison* court, as recalled by the *Ramos* court, made that finding despite acknowledging that "the term 'custody' has been used in various contexts to denote both confinement in a penal institution [citation] and time spent outside an institution [citation]. The court believed, however, that for purposes of section 5-8-7(b) the inmate's pretrial release on bond was not 'custody' within the meaning of the statute." *Id.*

¶ 19 The *Ramos* court stated:

> "Home confinement, though restrictive, differs in several important respects from confinement in a jail or prison. An offender who is detained at home is not subject to the regimentation of penal institutions and, once inside the residence, enjoys unrestricted freedom of activity, movement, and association. Furthermore, a defendant confined to his residence does not suffer the same surveillance and lack of privacy associated with becoming a member of an incarcerated population." *Id.* at 159.

¶ 20 Thereafter, the court found that the "legislature intended in section 5-8-7(b) of the Unified Code of Corrections to distinguish between defendants who are in custody and those who are released on bond, subject to the conditions of the bond. We therefore cannot conclude that the term 'custody,' as it is used in section 5-8-7(b), was intended to encompass the period of time during which a defendant is released on bond, regardless of the restrictions that might be imposed on him during that time." *Id.* at 160.

¶ 21 At all times relevant during *Ramos*, the Unified Code read as follows:

> "Calculation of Term of Imprisonment. (a) A sentence of imprisonment shall commence on the date on which the offender is received by the Department or the institution at which the sentence is to be served.
>
> > (b) The offender shall be given credit on the determinate sentence or maximum

term and the minimum period of imprisonment for time spent in custody as a result of the offense for which the sentence was imposed, at the rate specified in Section 3-6-3 of this Code." Ill. Rev. Stat. 1987, ch. 38, ¶ 1005-8-7(b).

¶ 22                                    B. *Beachem*

¶ 23     In *Beachem*, the State charged defendant with possession of a controlled substance with intent to deliver. *Beachem*, 229 Ill. 2d at 238. Our supreme court noted that, prior to the defendant's trial and conviction, he "was assigned to the Sheriff's Day Reporting Center program (Program) for 258 days and actually reported to the Day Reporting Center (Center) on 171 days." *Id.* at 239. Upon entry into the program, each participant must complete an eight-day orientation. Thereafter, each participant is placed on a track, which varies from nine hours per day to three hours per day. The concept is to acclimate the participant to the daily routine of reporting to a strictly supervised environment. *Id.* at 240.

¶ 24     At sentencing, the trial court credited defendant with 26 days toward his sentence of incarceration for the time he spent in "actual physical confinement." *Id.* at 241.

¶ 25     Ultimately, however, our supreme court found the defendant was in custody within the meaning of section 5-8-7 on the days he reported to the Center. *Id.* at 255. At all times relevant to the *Beachem* decision, section 5-8-7 stated: "(b) [t]he offender shall be given credit on the determinate sentence or maximum term and the minimum period of imprisonment for time spent in custody as a result of the offense for which the sentence was imposed." 730 ILCS 5/5-8-7(b) (West 2004); *Beachem*, 229 Ill. 2d at 244.

¶ 26     The *Beachem* court found the statutory language in section 5-8-7 ambiguous "because the term 'custody' has several definitions and nothing in the context of the statute provides any indication as to the appropriate definition." *Id.* at 246. The *Beachem* court then discussed *Morrison* and *Ramos*, commenting at length on the difference between being entered into the Day Reporting Program and being released on bond. *Id.* at 249-50. The *Beachem* court detailed in depth the rights of a defendant who is released on bond, including the right of being "entitled to judicial procedure before being arrested or having the terms of his liberty modified." *Id.*

¶ 27     Acknowledging that the *Ramos* defendant was only allowed to leave his residence 3 times in 168 days, the *Beachem* court found its ruling consistent with *Ramos* and emphasized the significant differences between the *Ramos* defendant's release on bond with the condition of home confinement and that of Beachem, who entered the Day Reporting Program. *Id.* "By contrast [to being released on bond], a defendant in the Program has no statutory entitlement to any of the foregoing procedures and protections. For instance, there is no requirement that the sheriff obtain a warrant prior to defendant's rearrest. *** Further, a defendant in the Program does not have a statutory right to challenge the terms, conditions, or rules of his participation in the Program. There is no established judicial procedure for a defendant to challenge the sheriff's selection of inmates for the Program, nor to contest the terms or the track to which he is assigned. There is no right to a hearing and no right to counsel. A defendant must simply adhere to the sheriff's unilaterally imposed conditions of participation." *Id.* at 250-51.

¶ 28     The *Beachem* court saw such a significant distinction between being released on bond and being a participant in the Day Reporting Program, it actually used the phrase, "Unlike a defendant who is actually released on bond ***." *Id*. at 251.

¶ 29    *Beachem* continued, noting the defendant therein "was still subject to confinement, albeit limited confinement, while at the Center. Defendant spent between three and nine hours a day in a state-run 'strictly supervised environment.' [Citation.] The amount of time defendant spent there, the program track defendant was placed on, and the services provided to him were all at the discretion of the sheriff. Defendant was not free to come and go as he pleased. He was not free to structure his day as he saw fit. He was obligated to report at an established time to and participate in a state-run program. He was not given the ability to decline attending on any given day. In fact, defendant's failure to report could result in his immediate arrest and reincarceration. Thus, unlike a defendant on a traditional bond, a defendant in the Program is not only under the 'constructive custody' of the sheriff, he is also under the sheriff's physical custody for several hours a day. Thus, we hold that defendant was in 'custody' while participating in the Program for the purposes of section 5-8-7." *Id*. at 253-54.

¶ 30                                C. Defendant's Argument

¶ 31    Initially, we must note that the parties quarrel over which version of the crediting statute, section 5-4.5-100(b) (730 ILCS 5/5-4.5-100(b) (West 2008)) or section 5-4.5-100 (730 ILCS 5/5-4.5-100 (West 2012)), applies to defendant's claims. The parties agree that the language contained in the most recent version of the statute is the most favorable to defendant's argument that his release on appeal equates to custody under the crediting statute. We need not decide this quarrel regarding which statute applies to defendant's case as we hold, for the reasons stated below, that defendant's home confinement while released on appeal bond does not equate to custody as defined by the either version of the statute.

¶ 32    Defendant notes that our supreme court decided *Beachem* in 2008. Without citation to any legislative history, defendant claims the legislature's most recent amendment to the crediting statute "was a codification of the Illinois Supreme Court's ruling in *Beachem*." Defendant continues, claiming that "credit for time on home detention has gone full circle from the blanket prohibition outlined in the 1990 decision in *Ramos*, to a discretionary standard adopted in 2010, and now mandatory credit as of June 22, 2012."

¶ 33    We disagree with defendant's assertion that *Beachem* or the current version of the statute mandates awarding him credit toward his sentence for the days he was released on appeal bond.

¶ 34    As the State aptly notes, be it section 5-4.5-100 (730 ILCS 5/5-4.5-100 (West 2012)) or section 5-8-7 (730 ILCS 5/5-8-7 (West 2006)), the crediting statute has stated that the offender shall be given credit "for time spent *in custody* as a result of the offense for which the sentence was imposed." (Emphasis added.) 730 ILCS 5/5-8-7 (West 2006); see also 730 ILCS 5/5-4.5-100 (West 2012). The State claims that defendant's home confinement does not equate to custody as a result of the offense for which the sentence was imposed. Instead, the State characterizes the home confinement as a self-requested condition necessary to secure his release from the custody which resulted from the offense defendant committed.

¶ 35    We agree with the State. Reading *Beachem* in conjunction with section 5-4.5-100 as presently constituted, we find that home confinement pursuant to an appeal bond does not qualify as custody entitling one to credit against his sentence under the statute.

¶ 36    *Beachem* supports our holding and serves to guide us in interpreting section 5-4.5-100. The *Beachem* court found section 5-8-7 was "ambiguous because the term 'custody' has

several definitions and nothing in the context of the statute provides any indication as to the appropriate definition." *Beachem*, 229 Ill. 2d at 246. While the legislature amended the crediting statute, repealing section 5-8-7 and creating section 5-4.5-100, it did nothing to provide a definitive definition of what it considers "custody" under the statute. As such, *Beachem*'s analysis still guides us to determine whether this defendant was in custody for purposes of the crediting statute.

¶ 37    As noted above, when differentiating between the defendant required to report to the Day Reporting Center in *Beachem* from the defendants released on bond in *Morrison* and *Ramos*, the *Beachem* court discussed all the protections afforded someone released on bond, such as the ability to challenge the conditions of release. The *Beachem* court further focused on the fact that it was the sheriff's department, not the court, which "unilaterally imposed conditions of participation" upon the participant in the Day Reporting Program. (Internal quotation marks omitted.) *Beachem*, 229 Ill. 2d at 251. The *Beachem* court stressed that any violation of the conditions imposed by the sheriff's department "could result in his immediate arrest and reincarceration." *Id.* at 253.

¶ 38    Conversely, the conditions of this defendant's home confinement were not set by the executive branch but, instead, by the court. A violation of those conditions, as noted in the court's order, would not result in immediate arrest but instead, "Any violation is to be reported to the on-call Grundy County State's Attorney *** and defense counsel office of Jeff Tomczak."

¶ 39    Unlike the *Beachem* defendant, who had no recourse but to accept the terms of the Day Reporting Program, the defendant herein could and, in fact, did petition the court to change his terms of home confinement. After learning the Grundy County probation department did not have the technology to provide the SCRAM device as originally ordered, defendant petitioned the court and was allowed to have the "Traffic School" monitor his device.

¶ 40    Defendant does not address any of the substantive differences from the conditions of *Beachem*'s Day Reporting Program to his conditions of release on appeal bond. He merely states that his home confinement while released on bond equates to home detention under the Electronic Home Detention Law (730 ILCS 5/5-8A-1 *et seq.* (West 2012)) and that the current crediting statute mandates the court "shall give credit to the defendant for time spent in home detention" (730 ILCS 5/5-4.5-100(b) (West 2012)). Therefore, defendant argues he is entitled to the credit. Again, we disagree.

¶ 41    The Home Detention Law defines home detention as "the confinement of a person convicted or charged with an offense to his or her place of residence under the terms and conditions established by the supervising authority." 730 ILCS 5/5-8A-2(C) (West 2012). "Supervising authority" is defined as "the Department of Corrections, probation supervisory authority, sheriff, superintendent of municipal house of corrections or any other officer or agency charged with authorizing and supervising home detention." 730 ILCS 5/5-8A-2(E) (West 2012).

¶ 42    Defendant argues that the terms of his release satisfy all the necessary elements to be considered home detention under the Home Detention Law. Specifically, he states that defendant's electronic monitoring was "supervised by probation." It was not. It was supervised by a private traffic school. Even if defendant's home confinement was supervised by the probation department, it would not meet the definition of home detention under the law. To satisfy the definition of home detention, the confinement must be "under the terms

and conditions established by the supervising authority." 730 ILCS 5/5-8A-2(C) (West 2012).

¶ 43　　What authority did the probation department have to set the terms and conditions of defendant's release on appeal bond? The answer, of course, is none. It was the trial court that "established" the "terms and conditions" of defendant's release. Defendant possessed the same right as the probation department to request that the court change the conditions and terms of his release. The absence of a similar right weighed heavily in the *Beachem* court's decision to find one ordered to report to a Day Reporting Program is "in custody" for purposes of the crediting statute. The bottom line is that the whole point of the appeal bond, like every other bond, was to avoid custody. Virtually every bond has restrictions, this one more than some. That does not change the very simple premise that the Code does not anticipate sentencing credit for time spent while released on bond. Our supreme court was unequivocal when holding that for purposes of sentencing credit, time spent in custody does not include that period of time during which a defendant is released on bond, regardless of the restrictions imposed as a condition of release. *Ramos*, 138 Ill. 2d at 160. We hold that defendant was not in custody within the meaning of section 5-4.5-100(b) (730 ILCS 5/5-4.5-100(b) (West 2012)) while released on appeal bond.

¶ 44　　　　　　　　　　　　　　　　　CONCLUSION

¶ 45　　For the foregoing reasons, the judgment of the circuit court of Grundy County is affirmed.

¶ 46　　Affirmed.