2025 IL App (2d) 240250
No. 2-24-0250
Opinion filed August 14, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kendall County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 20-CF-134 |
| RANDALL M. STAFFORD II, | ) ) ) | Honorable Robert P. Pilmer, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BIRKETT delivered the judgment of the court, with opinion.
Justices Jorgensen and Schostok concurred in the judgment and opinion.

**OPINION**

¶ 1    After a bench trial, defendant, Randall M. Stafford II, was convicted of aggravated domestic battery (720 ILCS 5/12-3.3(a-5) (West 2020)) and sentenced to six years' imprisonment. On appeal, defendant contends that the trial court erred in refusing him sentencing credit for the time he spent on electronic home monitoring while he was released on bond. We affirm.

¶ 2                                 I. BACKGROUND

¶ 3    On May 14, 2020, the State charged defendant with aggravated domestic battery. The trial court set his bail at $50,000[1] and placed him on electronic home monitoring (EHM) via global

_____
[1]On October 4, 2021, defendant's bond was increased to $75,000. The conditions were not changed.

positioning system (GPS). Its order stated, "The defendant shall *remain within the structure* of his *** place of residence *** except as provided in this order with prior permission from the probation department." (Emphasis in original.) The order allowed defendant to "leave his *** residence and travel directly to and from on the pre-approved route" for attorney appointments, court dates, and probation appointments. The Kendall County Court Services (KCCS) was made the GPS provider.

¶ 4    On August 12, 2020, the trial court modified defendant's bond. Its order read:

"[Defendant] is given permission to leave [his] residence for the purposes of doctor's appointments, counseling, and picking up prescribed medications at the pharmacy provided [defendant] obtains approval for movement prior to leaving his residence.

[Defendant] is given permission to leave the residence for the purpose of taking his mother grocery shopping (limited to 1x per week) provided [defendant] obtains approval prior to any such movement. Should [defendant] have an in[-]person interview for employment, he may leave the residence provided he receives prior approval for such movement."

¶ 5    On February 25, 2021, the trial court switched defendant's GPS provider to the Kendall County Sheriff's Office (KCSO) but made no other changes to the GPS arrangement.

¶ 6    On April 14, 2022, the trial court found defendant guilty of aggravated domestic battery and revoked his bond. On June 24, 2022, the court held a sentencing hearing. The parties agreed that defendant was entitled to 131 days' credit for the time he spent in jail before sentencing. However, defendant also sought credit for the time he spent on EHM. The trial court sentenced defendant to six years in prison, awarded him 131 days' sentencing credit, but denied him any credit for his time on EHM.

¶ 7    On July 18, 2022, defendant moved to reconsider his sentence, arguing that he was entitled to credit for the time he was on EHM. Defendant relied on section 5-4.5-100(b) of the Unified Code of Corrections (Code of Corrections) (730 ILCS 5/5-4.5-100(b) (West 2020)), which, as pertinent here, reads:

"[T]he offender shall be given credit *** for the number of days spent in custody as a result of the offense for which the sentence was imposed. The Department [of Corrections] shall calculate the credit at the rate specified in Section 3-6-3 (730 ILCS 5/3-6-3). The trial court shall give credit to the defendant for time spent in *home detention* on the same sentencing terms as incarceration as provided in Section 5-8A-3 (730 ILCS 5/5-8A-3). *Home detention for purposes of credit includes restrictions on liberty such as curfews restricting movement for 12 hours or more per day and electronic monitoring that restricts travel or movement. Electronic monitoring is not required for home detention to be considered custodial for purposes of sentencing credit.*" (Emphases added.)

¶ 8    On November 1, 2022, the trial court heard defendant's motion to reconsider. The State argued that section 5-4.5-100(b) did not apply because "home confinement"—as the State described defendant's arrangement—was not "custody." The trial court denied defendant's motion.

¶ 9    On June 13, 2023, after missing the deadline to file a late notice of appeal (see Ill. S. Ct. R. 606(c) (eff. Mar. 12, 2021)), defendant filed a *pro se* motion for leave to file a notice of appeal to raise the sentencing credit issue. On June 26, 2023, we denied the motion and directed defendant to Illinois Supreme Court Rule 472 (eff. May 17, 2019), which allowed the trial court to hear the credit issue at any time. On August 7, 2023, defendant filed a *pro se* "Motion to Correct Mittimus" to award him credit for the time he spent on EHM—allegedly 629 days. On February 22, 2024,

the trial court denied the motion. Defendant moved to reconsider. On April 4, 2024, the court denied the motion to reconsider, and defendant filed a notice of appeal.

¶ 10                                    II. ANALYSIS

¶ 11    On appeal, defendant argues that the trial court erred in denying him sentencing credit for the time he spent on EHM while out on bond before trial. He claims that he was entitled to credit for that period because he was in "custody" per section 5-4.5-100(b) of the Code of Corrections. Defendant acknowledges that this court and the Fifth District have denied sentencing credit to defendants who raised the same legal basis for credit. See *People v. Currey*, 2024 IL App (2d) 230099, ¶¶ 21-22; *People v. Donahue*, 2022 IL App (5th) 200274, ¶¶ 10-24. Defendant argues that these opinions are not soundly reasoned.

¶ 12    We review *de novo* whether a defendant is entitled to credit for time allegedly spent in custody before sentencing. *People v. Clark*, 2014 IL App (4th) 130331, ¶ 15. The resolution of this issue turns on statutory construction, which we also review *de novo*. *Bank of New York Mellon v. Laskowski*, 2018 IL 121995, ¶ 12.

¶ 13    To place *Donahue* in context, we start with *People v. Ramos*, 138 Ill. 2d 152 (1990). As of 1988, when the defendant in *Ramos* was sentenced, section 5-8-7 of the Code of Corrections (Ill. Rev. Stat. 1987, ch. 38, ¶ 1005-8-7) (later renumbered as section 5-4.5-100 (see Pub. Act 95-1052, § 5 (eff. July 1, 2009) (renumbering as 730 ILCS 5/5-4.5-100))) governed sentencing credit. Subsection (b) of section 5-8-7 provided day-for-day credit for " 'time spent in custody as a result of the offense for which the sentence was imposed.' " *Ramos*, 138 Ill. 2d at 154 (quoting Ill. Rev. Stat. 1987, ch. 38, ¶ 1005-8-7(b)). We note that, in 1988, the entire subsection (b) of section 5-8-7 consisted essentially of what is the first sentence of the current section 5-4.5-100(b) (see 730 ILCS 5/5-4.5-100(b) (West 2020)). After being charged, the defendant in *Ramos* was released on

bond but was not allowed to leave home without permission from either the trial court or his probation officer. *Ramos*, 138 Ill. 2d at 154. During his 168 days of "home detention" (the supreme court's descriptor) preceding his guilty plea, the defendant was allowed to leave home on only three occasions. *Id.* After he was sentenced, the defendant requested a credit per section 5-8-7(b) for "the 168 days he spent in home confinement." *Id.* The trial court denied the request, holding that the defendant had not been in "custody" for that period. *Id.*

¶ 14    The supreme court affirmed the denial of credit. *Id.* at 162. Relying on *People ex rel. Morrison v. Sielaff*, 58 Ill. 2d 91 (1974), the court held that the term "custody" as used in section 5-8-7(b) did not include " 'the period of time during which the defendant was released on bail but [was] predicated upon his confinement.' " *Ramos*, 138 Ill. 2d at 158 (quoting *Morrison*, 58 Ill. 2d at 94). The court reasoned:

"The purpose of the credit-against-sentence provision is to ensure that defendants do not ultimately remain incarcerated for periods in excess of their eventual sentences. [Citation.] Granting credit against a sentence of imprisonment for time previously spent in institutional custody clearly serves that purpose; granting credit for time spent while released on bond, even with the restrictive conditions imposed here, does not.

Home confinement, though restrictive, differs in several important respects from confinement in a jail or prison. An offender who is *detained* at home is not subject to the regimentation of penal institutions and, once inside the residence, enjoys unrestricted freedom of activity, movement, and association. Furthermore, a defendant *confined* to his residence does not suffer the same surveillance and lack of privacy associated with becoming a member of an incarcerated population." (Emphases added.) *Id.* at 159.

The court concluded that "the legislature did not intend the term 'custody' to apply to the period of time during which a defendant is released on bail." *Id.* at 162. Notably, the court's analysis did not distinguish between "home detention" and "home confinement." Instead, it used the terms interchangeably and concluded that such pretrial arrangements cannot amount to "custody" under section 5-8-7(b).

¶ 15    In *dicta*, *Ramos* noted that, as of January 1, 1989, the Code of Corrections authorized, as a condition of bond, "[the] imposition of home confinement 'with or without the use of an approved monitoring device.' " *Id.* at 161-62 (quoting Ill. Rev. Stat., 1988 Supp., ch. 38, ¶ 110-10(b)(14)). However, the court did not "discern an intent by the legislature, *** to expand the circumstances in which a defendant is entitled to receive credit under section 5-8-7(b)." *Id.* at 162.

¶ 16    Next, we turn to *People v. Beachem*, 229 Ill. 2d 237 (2008). As applicable in *Beachem*, section 5-8-7(b) read:

> "The offender shall be given credit on the determinate sentence *** for time spent in *custody* as a result of the offense for which the sentence was imposed, at the rate specified in Section 3-6-3 of this Code. *** [T]he trial court may give credit to the defendant for time spent in *home detention*, or when the defendant has been confined for psychiatric or substance abuse treatment prior to judgment, *if the court finds that the detention or confinement was custodial*." (Emphasis added.) 730 ILCS 5/5-8-7(b) (West 2004).

¶ 17    The defendant in *Beachem* was sentenced to six years in prison for a drug offense. *Beachem*, 229 Ill. 2d at 238, 241. He sought credit for his time spent in the "Sheriff's Day Reporting Center program" (Program). *Id.* The Program was initiated to comply with a consent decree capping the population of the county jail. *Id.* at 240. The order required the sheriff to release certain prisoners, who would then undergo supervision administered by the sheriff's office. *Id.* at

240-41. Each participant was subject to mandatory daily attendance at the Day Reporting Center (Center) and drug testing, and violations of Program rules could result in reincarceration. *Id.* The defendant spent 258 days in the Program but only 171 days reporting in person to the Center, for between 3 and 9 hours per day. *Id.* at 239. In the trial court, the defendant did not seek credit for his participation in the Program. *Id.* at 241. In the appellate court, he sought credit for the full 258 days in the Program. *People v. Beachem*, 374 Ill. App. 3d 145, 150 (2007). The appellate court credited him for only the 171 days that he actually reported to the Center. *Id.* at 153.

¶ 18    The supreme court affirmed. The court noted that the issue turned on the meaning of "custody" in section 5-7-8(b). *Beachem*, 229 Ill. 2d at 244. Neither section 5-7-8(b) nor any other relevant statute defined the term, and the court concluded that it was ambiguous. *Id.* at 244, 246. The goal of the court's statutory interpretation was to determine "what degree of control the legislature intended when it used the term 'custody' " *Id.* at 246.

¶ 19    To answer this question, the supreme court recounted *Ramos*'s holding that being on EHM while released on bond is not "custody." *Id.* at 247. The *Beachem* court concluded, however, that participation in the Program was not the same as release on bond. *Id.* at 249. The court explained that a bond set by the trial court "provides a defendant with [statutorily mandated] judicial procedures that not only protect him from arbitrary arrest, but also provide a means to modify or contest an aspect of or denial of bond." *Id.* at 249-50. By contrast, a participant in the Program had no statutory right to such protections; for instance, there was no requirement that the sheriff obtain a warrant before rearresting a Program participant. *Id.* at 250-51. Moreover, a Program participant had no statutory right to challenge, in court or otherwise, "the terms, conditions, or rules of his participation in the Program." *Id.* at 251. The defendant in *Beachem* never posted bail and was never admitted to bond; he was released subject to the legal custody of the sheriff and was legally

bound to obey requirements the sheriff imposed in the exercise of his unfettered discretion. *Id.* at 253. The defendant "had no right to be in the Program and had no recourse under the statutes of this state if the sheriff decided to reincarcerate him, or even to terminate the entire Program and reincarcerate all the participants." *Id.* The court found that the defendant was in " 'constructive custody,' " even when not physically present at the Center. *Id.*

¶ 20    The supreme court stated next that, even if physical confinement were needed to establish custody, the defendant had been physically confined for three to nine hours each day while he was mandatorily at the Center, and his liberty was considerably restricted there. *Id.* Thus, "[the] defendant was in 'custody' [constructive or physical] while participating in the Program for the purposes of section 5-8-7." *Id.* at 253-54. However, because the defendant had not argued that he was entitled to credit for the 87 days that he was in the Program but not at the Center (*id.* at 243 n.3), the supreme court affirmed the appellate court's award of only 171 days. *Id.* at 255.

¶ 21    We turn next to *People v. Smith*, 2014 IL App (3d) 130548. To set the context for *Smith*, we note that, effective January 1, 1991, after *Ramos* was decided, the Code of Corrections was amended to add the Electronic Home Detention Law[2] (Home Detention Law). See Pub. Act 86-1281, § 3 (eff. Jan. 1, 1991) (adding 730 ILCS 5/5-8A-1 *et seq.*). The Home Detention Law, which was applied in *Smith* (see *Smith*, 2014 IL App (3d) 130548, ¶ 41), authorized "electronic home detention" for, *inter alia*, defendants on pretrial detention. 730 ILCS 5/5-8A-3(f)(1) (West 2012). The Home Detention Law defined "home detention" as "the confinement of a person convicted [of] or charged with an offense to his or her place of residence under the terms and conditions

---

[2]In 2016, the name was changed to the Electronic Monitoring and Home Detention Law. See Pub. Act 99-797, § 10 (eff. Aug. 12, 2016) (amending 730 ILCS 5/5-8A-1).

established by the supervising authority." *Id.* § 5-8A-2(C). In turn, the Home Detention Law defined "supervising authority" as "the Department of Corrections, probation supervisory authority, sheriff, superintendent of municipal house of corrections or any other officer or agency charged with authorizing and supervising home detention." *Id.* § 5-5-8A-2(E).

¶ 22    In *Smith*, the defendant was convicted of driving under the influence of alcohol and sentenced to three years' imprisonment. *Smith*, 2014 IL App (3d) 130548, ¶ 1. He was released on bond, pending the resolution of his appeal; placed on home confinement with EHM; and allowed to travel only to go to work. *Id.* ¶¶ 4-5. After the appellate court affirmed his conviction and sentence, the defendant filed in the trial court a motion under section 5-4.5-100(b) of the Code of Corrections (730 ILCS 5/5-4.5-100(b) (West 2012) (formerly 730 ILCS 5/5-8-7(b))), seeking sentencing credit for the time that he was released pending appeal. *Smith*, 2014 IL App (3d) 130548, ¶ 7. Effective June 22, 2012, after his sentencing but before his appeal was decided, section 5-4.5-100(b) was amended to make credit for time spent in "home detention" mandatory. See Pub. Act 97-697, § 5 (eff. June 22, 2012) (amending 730 ILCS 5/5-4.5-100(b)). The trial court denied the credit. *Smith*, 2014 IL App (3d) 130548, ¶ 7.

¶ 23    The appellate court affirmed. It relied on the factors that *Beachem* used to distinguish release on bond with conditions (such as EHM, as in *Ramos*, where custody was not found) from the Program in *Beachem* (where custody was found). *Id.* ¶¶ 36-40. The conditions of the defendant's bond were set by the trial court, not the executive branch; a violation of the conditions would result not in an immediate arrest but in a report to the state's attorney's office and defense counsel; and the defendant could petition the trial court to change the terms of his home confinement. *Id.* ¶¶ 38-39. Thus, the court concluded that the defendant's release on bond did not constitute "custody" under section 5-4.5-100(b) of the Code of Corrections. *Id.*

¶ 24    However, the defendant argued that his release was "home detention" under section 5-4.5-100(b) because it "equate[d] to home detention under the [Home Detention Law]," and he noted that section 5-4.5-100(b) provided that a court " 'shall give credit to the defendant for time spent in home detention.' " *Id.* ¶ 40 (quoting 730 ILCS 5/5-4.5-100(b) (West 2012)).

¶ 25    The appellate court disagreed, pointing out that the Home Detention Law defined "home detention" as the confinement of a person to his residence " 'under the terms and conditions established by the supervising authority.' " *Id.* ¶ 41 (quoting 730 ILCS 5/5-8A-2(C) (West 2012)). The Home Detention Law defined " '[s]upervising authority' " as " 'the Department of Corrections, probation supervisory authority, sheriff, superintendent of municipal house of corrections or any other officer or agency charged with authorizing and supervising home detention.' " *Id.* (quoting 730 ILCS 5/5-8A-2(E) (West 2012)). Although the defendant argued that the probation department was the "supervising authority" in his case, the appellate court disagreed because (1) the defendant's home confinement was supervised by a private entity (*id.* ¶ 42) and (2) even if the probation department had supervised his home confinement, it was the trial court that established the terms and conditions of the confinement (*id.* ¶¶ 42-43). The court stressed that the mere fact that the bond had restrictions did not render the release custodial; the court noted that, in *Ramos*, "[o]ur supreme court was unequivocal when holding that *** time spent in custody does not include that period of time during which a defendant is released on bond, regardless of the restrictions imposed as a condition of release." *Id.* ¶ 43 (citing *Ramos*, 138 Ill. 2d at 160).

¶ 26    Effective July 1, 2021, the legislature again amended section 5-4.5-100(b) of the Code of Corrections. See Pub. Act 101-652, § 10-281 (eff. July 1, 2021) (amending 730 ILCS 5/5-4.5-100(b)). As amended, the section read as follows, with the relevant new text emphasized:

"[T]he offender shall be given credit *** for the number of days spent in custody as a result of the offense for which the sentence was imposed. The Department shall calculate the credit at the rate specified in Section 3-6-3 (730 ILCS 5/3-6-3). The trial court shall give credit to the defendant for time spent in home detention on the same sentencing terms as incarceration as provided in Section 5-8A-3 (730 ILCS 5/5-8A-3). *Home detention for purposes of credit includes restrictions on liberty such as curfews restricting movement for 12 hours or more per day and electronic monitoring that restricts travel or movement. Electronic monitoring is not required for home detention to be considered custodial for purposes of sentencing credit*." (Emphasis added.) 730 ILCS 5/5-4.5-100(b) (West 2020).

¶ 27    In *Donahue*, the defendant was charged with possessing child pornography. *Donahue*, 2022 IL App (5th) 200274, ¶ 3. He posted bond and was released per an agreement under which his "electronic supervision program" (supervision program) would be supervised by both the trial court and the probation department. *Id.* ¶ 4. The supervision program required the defendant to stay home unless he was leaving for an approved reason, such as work, or was authorized to leave by the trial court or the probation department. *Id.* ¶¶ 4, 11. He agreed to wear a transmitter at all times and be subject to phone calls or visits by the probation department or the police. *Id.* ¶ 4. After the defendant pleaded guilty and was sentenced to six years' imprisonment, he moved for credit for the time he was on bond per the agreement. *Id.* ¶ 6. The trial court denied the motion. *Id.* All the foregoing took place between April 2019 and August 2020, before the July 1, 2021, amendment to section 5-4.5-100(b).

¶ 28    On appeal, the defendant argued that the trial court erred in denying him any credit for his time on bond under the supervision program, which included EHM. *Id.* ¶ 9. The appellate court first addressed whether the version of section 5-4.5-100(b) in effect in 2020 supported the

defendant. *Id.* ¶¶ 9-10. The dispositive question was "whether the defendant was participating in a home detention program, such that he would be entitled to sentencing credit." *Id.* ¶ 10. Thus, the underlying issue was the construction of "home detention" in section 5-4.5-100(b) as it read in 2020. *Id.*

¶ 29 The court began the analysis by examining section 110-10(b)(14) of the Code of Criminal Procedure of 1963 (Code of Criminal Procedure) (725 ILCS 5/110-10(b)(14) (West 2020)), which authorized, as a condition of bond, placing a defendant " 'under direct supervision of the Pretrial Services Agency, Probation Department or Court Services Department in a pretrial bond home supervision capacity with or without the use of an approved electronic monitoring device subject to Article 8A of Chapter V of the [Code of Corrections].' " *Donahue*, 2022 IL App (5th) 200274, ¶ 12 (quoting 725 ILCS 5/110-10(b)(14) (West 2020)). The court construed "home supervision," which the statute did not define, as "the inspecting, directing, and evaluating [of the] defendant's compliance with the terms of his bond conditions." *Id.* By contrast, "home detention," as defined by the Home Detention Law, was " ' the confinement of a person convicted [of] or charged with an offense to his or her place of residence under the terms and conditions established by the supervising authority.' " *Id.* ¶ 14 (quoting 730 ILCS 5/5-8A-2(C) (West 2020)). Thus, the court saw "home supervision" and "home detention" as "two separate and distinct concepts." *Id.* ¶ 15.

¶ 30 The court noted that "home supervision" might "sound like 'custody,' meaning a duty to submit to legal authority." *Id.* (citing *People v. Riley*, 2013 IL App (1st) 112472, ¶ 12). However, the court observed that *Ramos* and *Beachem* both held that the time a defendant spends on bond, even with EHM or other conditions, "would never qualify as 'custody' or 'confinement' for sentencing credit purposes." *Id.* ¶ 20. Therefore, "home supervision as a condition of bond ***

does not constitute either confinement or custody as those terms are understood in section 5-4.5-100(b)." *Id.*

¶ 31 The court saw a second barrier to concluding that "home supervision" constitutes "home detention": the Home Detention Law defined the latter as "confinement, meaning actual physical confinement." *Id.* ¶ 21 (citing 730 ILCS 5/5-8A-2(C) (West 2020) (defining "home detention" as "the confinement of a person convicted [of] or charged with an offense to his or her place of residence under the terms and conditions established by the supervising authority")). Since *Ramos* and *Beachem* both held that in-home EHM as a condition of bond is not "confinement," they also implied that it is not "home detention" for purposes of section 5-4.5-100(b). *Id.*

¶ 32 The *Donahue* court then applied the foregoing statutory analysis to the facts of the case. It explained first that the defendant's supervision program—which was "home supervision" per section 110-10(b)(14) of the Code of Criminal Procedure—could not be equated with "home detention" merely because section 110-10(b)(14) referenced the Home Detention Law. *Id.* ¶ 23. Instead, the legislature intended those terms to mean "different things." *Id.*

¶ 33 The court stated:

"In other words, the use of 'home supervision' in the bail provisions means that the legislature did not intend that *any* time an offender was released on bond with a condition that he remain at his residence (or residence and workplace), he would *automatically* be deemed to have been placed in a home detention program, thereby making him eligible for sentencing credit. Instead, *if he were placed in a home detention program, the trial court would have to expressly state that the offender was being confined in a home detention program*, and the requirements of that program would have to be followed for the offender to later qualify for sentencing credit." (Emphases added.) *Id.* ¶ 24.

¶ 34 Having concluded that the defendant's supervision program did not qualify as "home detention" under section 5-4.5-100(b), the court then held that it was not otherwise "custody" under that provision. The court reasoned:

"[E]ven if we deny the defendant's contention that he was on 'home detention,' but accept that his [EHM] was tantamount to custody, we cannot give him sentencing credit because he was on bond, and *Ramos* prohibits the award of sentencing credit for time spent on bond *no matter how restrictive the conditions*." (Emphasis added.) *Id.* ¶ 26.

¶ 35 Thus, *Donahue* construed "home detention" in section 5-4.5-100(b), as it read in 2020, to exclude time spent on bond with EHM. It held further that "custody," even if such a condition were possible absent home detention, did not include time spent on bond with EHM.

¶ 36 The court then turned to the impact of the 2021 amendment to section 5-4.5-100(b) (see Pub. Act 101-652, § 10-281 (eff. July 1, 2021) (amending 730 ILCS 5/5-4.5-100(b))). *Donahue*, 2022 IL App (5th) 200274, ¶ 27. It held that the amendment did not aid the defendant. *Id.* ¶ 28.

¶ 37 First, the court reasoned, the amendment did not change the meaning of the term "home detention" and did not collapse the distinction between "home supervision" and "home detention." *Id.* Thus, the defendant could not benefit from whatever liberalization or clarification the amendment provided. *Id.*

¶ 38 Second, the court reasoned, the Home Detention Law defined "home detention" as not merely home confinement, but home confinement " 'under the terms and conditions established by the supervising authority.' " *Id.* ¶ 29 (quoting 730 ILCS 5/5-8A-2(C) (West 2020)). " '[S]upervising authority,' " in turn, embraced a wide variety of agencies, including the probation department. *Id.*; see 730 ILCS 5/5-8A-2(C) (West 2020)). However, the probation department did not establish the terms and conditions of the defendant's EHM; the trial court did, and they were

not within the definition of "supervising authority." *Donahue*, 2022 IL App (5th) 200274, ¶¶ 29-32.

¶ 39    In *Currey*, this court followed *Donahue* but added no new analysis. *Currey*, 2024 IL App (2d) 230099, ¶¶ 21-23.

¶ 40    After reviewing the pertinent case law, we turn to the merits of this appeal. Defendant argues first that *Donahue* wrongly held that, because release on bond with EHM is "home supervision" per section 110-10(b)(14) of the Code of Criminal Procedure, it can never be "home detention" per section 4.5-100(b) of the Code of Corrections. We do not interpret *Donahue* as establishing such an absolute, formalistic rule. Rather, the court held, as we noted, that "the legislature did not intend that *any* time an offender was placed on bond with a condition that he remain at his residence *** he would *automatically* be deemed to have been placed in a home detention program." (Emphasis added.) *Donahue*, 2022 IL App (5th) 200274, ¶ 24. Both we and defendant agree with this statement. To the extent that *Donahue* or *Currey* could be read more broadly on this matter, we do not follow them.

¶ 41    Of course, we do not foreclose the possibility that something *other* than the formal phrasing of section 110-10(b)(14) could create an inherent incompatibility between "home supervision" thereunder and "home detention." But to resolve that more general matter, we need not discuss section 110-10(b)(14) further. The issue will turn on section 5-4.5-100(b) of the Code of Corrections.

¶ 42    Defendant argues second that *Donahue* erred in stating that, to place a defendant into a home detention program, "the trial court would have to expressly state that [he] was being confined in a home detention program." *Id.* On this, we agree with defendant. *Donahue* cited no authority

for its assertion that a trial court must use "magic words" to turn something into "home detention" even if it already meets the statutory definition.

¶ 43    Having disposed of defendant's two preliminary arguments, we turn to the heart of this appeal. Defendant argues that *Donahue* wrongly defined "home detention" as used in the Home Detention Law and applied this improper definition in interpreting section 5-4.5-100(b).

¶ 44    We start with basic principles of statutory construction. The primary objective of statutory construction is to ascertain and give effect to the true intent of the legislature. *People v. Clark*, 2019 IL 122891, ¶ 18. The true intent of the legislature is most reliably discerned from the plain meaning of the statutory language. *Id.* ¶ 20. If the language is unambiguous, it must be given effect without resorting to further aids of construction. *People v. McCarty*, 223 Ill. 2d 109, 124 (2006). One aid of construction, the doctrine of *in pari materia*, holds that two statutes dealing with the same subject will be considered with reference to one another to give them a harmonious effect. *Id.* at 133. Also, we must presume that the legislature did not intend an absurd result. *People v. Clark*, 2024 IL 130364, ¶ 26.

¶ 45    Section 5-4.5-100(b) does not define "home detention," but the Home Detention law does. Because these statutory provisions are *in pari materia*, we agree with *Donahue* (and defendant) that we must begin with the Home Detention Law's present definition of "home detention":

"'Home detention' means the confinement of a person convicted [of] or charged with an offense to his or her place of residence *under the terms and conditions established by the supervising authority*. Confinement need not be 24 hours per day to qualify as home detention, and significant restrictions on liberty such as 7pm [*sic*] to 7am [*sic*] curfews shall qualify. Home confinement may or may not be accompanied by electronic monitoring, and

- 16 -

electronic monitoring is not required for purposes of sentencing credit." (Emphasis added.)

730 ILCS 5/5-8A-2(C) (West 2020).

¶ 46    In turn, the Home Detention Law defines "supervising authority" as

"the Department of Corrections, the Department of Juvenile Justice, probation department,

a Chief Judge's office, pretrial services division or department, sheriff, superintendent of

municipal house of corrections or any other officer or agency charged with authorizing or

supervising electronic monitoring and home detention." *Id.* § 5-8A-2(E).

¶ 47    The *Donahue* court held that the defendant had not been on "home detention," as defined

by section 5-8-2A(C), because the terms and conditions of his confinement had not been " 'under

the terms and conditions established by the supervising authority.' " *Donahue*, 2022 IL App (5th)

200274, ¶ 29 (quoting 730 ILCS 5/5-8A-2(C) (West 2020)). Those terms and conditions had been

established by the trial court in its orders releasing the defendant on bond and later modifying his

bond. *Id.* ¶ 32. Relying on *Smith*, *Donahue* concluded that the trial court was not a "supervising

authority" and, therefore, the defendant had not been on "home detention" while he was awaiting

trial. *Id.* ¶¶ 30-32 (citing *Smith*, 2014 IL App (3d) 130548, ¶¶ 42-43).

¶ 48    We agree with *Donahue* and *Smith* that the plain language of section 5-8A-2 of the Home

Detention Law excludes from "home detention" any home confinement, with or without EHM,

where the terms and conditions were established by the trial court, as they were in *Donahue* and

*Smith*—and here.

¶ 49    Defendant, however, raises two arguments against effectuating what we see as the plain

statutory language. First, he asserts that the terms and conditions of his confinement should be

deemed established first by the trial court, later by the KCCS, and still later by the KCSO because

each agency in turn administered the GPS and curfew by "us[ing] an established process to monitor

[defendant's] confinement." We cannot accept defendant's invitation to equate *administering* the terms and conditions of home confinement with the antecedent act of *establishing* those terms and conditions. Here, the agencies *administered* the terms and conditions that the trial court had previously *established*. The trial court—not the KCCS or the KCSO—exercised all the power to decide where defendant could go and when he could do so.

¶ 50    Defendant asserts second that to accept the plain meaning of section 5-8A-2 of the Home Detention Law would produce an absurd result that the legislature could not have intended. He reasons that, because "home detention" can exist only when the defendant is released from jail, and only the trial court can impose the terms and conditions of the defendant's release, "then 'home detention' literally cannot apply in the pretrial context."

¶ 51    Defendant's statement is not quite accurate. In *Beacham*, the trial court released the defendant from jail; however, the terms and conditions of his ensuing confinement were established by the sheriff, a "supervising authority" under the Home Detention Law. Nonetheless, we concede that (1) *Beachem* appears to be unique among precedential cases in this regard and (2) instances in which the terms and conditions of a defendant's release from jail are established by anyone other than the trial court will be rare indeed.

¶ 52    Further, it is difficult to imagine a scenario in which a defendant is not on "home detention" but is in "custody" under section 5-4.5-100(b) of the Code of Corrections. Even with the amendments to that provision over several decades, it does not appear that the supreme court has retreated from its statements in *Ramos* and *Beachem* that confinement on bond with conditions set by the trial court can never be "custody" under section 5-4.5-100(b). Only if we view the amendments since *Ramos* as implicitly limiting that opinion can we escape its implications. However, such a reading would be dubious at best, given the continuing use in section 5-4.5-100(b)

of the term "home detention" and the lack of any direct statement in the amendments that the term as employed there does not carry the same meaning it is given in the Home Detention Law. And defendant here makes no argument that the amendments were intended to create a separate definition of "home detention" for section 5-4.5-100(b).

¶ 53    We note further that "[w]here the legislature chooses not to amend a statute after a judicial construction, it will be presumed that it has acquiesced in the court's statement of the legislative intent." (Internal quotation marks omitted.) *Blount v. Stroud*, 232 Ill. 2d 302, 324 (2009) (noting that the presumption is, however, "merely a jurisprudential principle" and "not a rule of law" (internal quotation marks omitted)).

¶ 54    Given the legislature's longstanding acquiescence in the judicial construction of the terms "home detention" and "custody" in section 5-4.5-100(b), we cannot conclude that the legislature intended to give those terms any meanings other than what the plain statutory language requires. Any concern with the narrowness of section 5-4.5-10(b)'s application must be addressed by the legislature, not this court.[3]

---

[3]At oral argument, defendant noted that, effective September 18, 2023, section 110-5(h) of the Code of Criminal Procedure (725 ILCS 5/110-5(h) (West 2022)) was amended to provide that "[a] defendant shall be given custodial credit for each day he or she was subjected to home confinement, at the same rate described in subsection (b) of Section 5-4.5-100 of the [Code of Corrections] [730 ILCS 5/5-4.5-100 (West 2020)]." See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of Public Act 101-652 (eff. Jan. 1, 2023)); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). Because defendant was sentenced before the amendment's effective date, its credit mandate does not apply to defendant. See *People v. Carter*, 2022 IL App (1st) 210261, ¶ 147. Nor do we read this amendment as evidence that the legislature previously intended different meanings for "custody"

¶ 55 Finally, defendant argues that *People v. Wells*, 2024 IL 129402, "implicitly refutes the reasoning of *Donahue* and, thus, *Currey*," even though (as defendant concedes) the case was decided solely on a separate ground. For the following reasons, we disagree with defendant that *Wells* undercuts *Donahue* and *Currey*.

¶ 56 In *Wells*, the defendant was charged with three drug offenses. *Id.* ¶ 3. In December 2020, the trial court released him on bond, subject to GPS monitoring and a curfew. *Id.* ¶¶ 3-4. Later, the trial court shortened the curfew, and, in June 2021, it removed the bond conditions altogether. *Id.* ¶ 3. In November 2021, the defendant pleaded guilty to one charge per a fully-negotiated agreement under which he would receive sentencing credit for the time he spent in jail before posting bond. *Id.* ¶¶ 6-8. Later, he moved for credit for the time he spent on bond with GPS monitoring before his plea. *Id.* ¶ 9. The trial court denied the motion, and the defendant appealed. *Id.* ¶¶ 9, 11. The appellate court affirmed the trial court on the basis that, by pleading guilty per the agreement, the defendant waived any presentencing credit not provided therein. *Id.* ¶ 11; see *People v. Wells*, 2023 IL App (4th) 220552-U, ¶¶ 22, 26, 32.

¶ 57 The supreme court affirmed. The "dispositive issue" was whether, by entering the fully-negotiated plea that limited his presentencing credit to jail time, the defendant "agreed to forgo *his right to credit for the time he spent on home detention.*" (Emphasis added.) *Wells*, 2024 IL 129402, ¶ 19. Applying established contract-based principles, the court held that, by agreeing, the defendant had waived any claim to presentencing credit for his time on GPS monitoring. *Id.* ¶ 30.

---

and "home detention" in section 5-4.5-100(b) of the Code of Corrections.

¶ 58    Seizing upon the supreme court's framing of the issue in *Wells* as whether the defendant waived "his *right* to credit for the time he spent on *home detention*" (emphases added) (*id.* ¶ 19), defendant asserts:

> "[T]he [s]upreme [c]ourt seemed to take as a given that the defendant was on 'home detention' while on bond with confinement conditions, even going so far as to acknowledge that he would have been statutorily entitled to credit for that time if he had not entered into a fully negotiated plea agreement that excluded such credit."

Defendant suggests that, although the supreme court "has not yet squarely resolved the questions raised by *Donahue* and *Currey*, *** *Wells* *** certainly hints at its answers."

¶ 59    We do not believe that, in one phrase of *dicta*, the supreme court implicitly disapproved of a long line of case authority and approved a novel definition of a term used in two statutes—*and* chose not to mention either the cases or the statutes, nor provide legal support for this alleged innovation. We are bound by supreme court holdings, not "hints," and defendant's speculation about future supreme court holdings is no basis for reversal.

¶ 60                                III. CONCLUSION

¶ 61    For the reasons stated, we affirm the judgment of the circuit court of Kendall County.

¶ 62    Affirmed.

---

**_People v. Stafford_, 2025 IL App (2d) 240250**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kendall County, No. 20-CF-134; the Hon. Robert P. Pilmer, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Christopher McCoy, and Jaime L. Montgomery, of State Appellate Defender's Office, of Elgin, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Eric C. Weis, State's Attorney, of Yorkville (Patrick Delfino, Edward Psenicka, and Gabrielle Moore, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

---